EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Desarrollos de Ciudad Real S.E.<br>        Recurrida<br><br>             v.<br><br> Municipio de Vega Baja<br>        Peticionario<br><br>José A. Cubano Torres, et al.<br>        Codemandados<br>* * * * * * * * * * * * * * * * * * * *<br>José A. Cubano, et al.<br>        Demandantes<br><br>             v.<br><br>Corp. Desarrollo Ciudad Real, et al.<br>        Recurrida | Certiorari<br><br>2004 TSPR 14<br><br>160 DPR \_\_\_\_ |

Número del Caso: CC-1999-762

Fecha: 29 de enero de 2004

Tribunal de Circuito de Apelaciones:
                    Circuito Regional II

Juez Ponente:
                    Hon. Jeannette Ramos Buonomo

Abogados de la Parte Peticionaria:
                    Lcdo. Juan González Santiago
                    Lcdo. José L. Gándara
                    Lcdo. Frank Pérez Jiménez

Abogado de la Parte Recurrida:
                    Lcdo. Marcos Valls Sánchez


Materia: Interdicto, Interdicto Preliminar y Sentencia
        Declaratoria

Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correcciones del proceso
de compilación y publicación oficial de las decisiones del
Tribunal. Su distribución electrónica se hace como un servicio
público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Desarrollos de Ciudad Real S.E.  *
                                 *
        Recurrida               *
                                 *
           v.                    *          CC-1999-762
                                 *
Municipio de Vega Baja           *
                                 *
        Peticionario             *
                                 *          Certiorari
José A. Cubano Torres, *et al.*  *
                                 *
        Codemandados             *
******************************* *
José A. Cubano, *et al.*          *
                                 *
        Demandantes              *
                                 *
Corp. Desarrollo Ciudad Real,    *
*et al.*                          *
                                 *
        Recurrida                *
******************************* *

Opinión del Tribunal emitida por el Juez Asociado SEÑOR CORRADA DEL RÍO

San Juan, Puerto Rico, a 29 de enero de 2004.

Nos corresponde resolver si la servidumbre legal de paso de alcantarillado y desagüe pluvial, estatuida en la Ley de Servidumbres de Servicio Público de Paso, 27 L.P.R.A. § 2151 *et seq.,* es de constitución automática o si se necesita, como requisito indispensable para su constitución, del consentimiento expreso del Municipio.

I

El 21 de enero de 1992, Desarrollos de Ciudad Real S.E. (en adelante, "Ciudad Real") presentó ante la Junta de Planificación de Puerto Rico una consulta de ubicación

para el desarrollo y construcción de un proyecto residencial en el barrio Algarrobo del Municipio de Vega Baja (en adelante, "Municipio"). Luego de los trámites de rigor, el 29 de abril de 1993, la Junta de Planificación aprobó la referida consulta.

Posteriormente, Ciudad Real solicitó a la Administración de Reglamentos y Permisos (en adelante, "ARPE") la aprobación del plano de desarrollo preliminar del proyecto. Según lo solicitado, el 4 de junio de 1993, ARPE aprobó dicho plano y autorizó la preparación de los planos de construcción. Conforme a ello, Ciudad Real procedió a confeccionar y certificar los referidos planos, diseñados para la construcción de 596 unidades de vivienda.

Así las cosas, Ciudad Real presentó los planos de construcción y el plano de desarrollo preliminar aprobado por ARPE ante las agencias e instrumentalidades del gobierno concernidas para su endoso, entre las cuales se encontraban el Municipio y el Departamento de Recursos Naturales (en adelante, "DRN").[1] Al mismo tiempo, Ciudad Real presentó los referidos planos ante ARPE con el fin de solicitar el correspondiente permiso de urbanización.

El 28 de febrero de 1994, el DRN endosó la construcción de la primera sección del proyecto equivalente a 199 unidades de vivienda. No obstante,

---

[1] *Véase* Reglamento de Planificación Núm. 12 de 8 de mayo de 1984, según enmendado, para la Certificación de Proyectos de Construcción.

para endosar el resto del proyecto requirió a Ciudad Real la preparación de un estudio hidrológico-hidráulico que analizara el impacto del sistema pluvial del proyecto sobre las condiciones existentes en el área.[2] Para realizar el estudio, Ciudad Real contrató al ingeniero Iván Velázquez.

Por su parte, el 30 de marzo de 1994, el Municipio endosó la totalidad del proyecto de construcción propuesto por Ciudad Real. Posteriormente, el 27 de abril de 1994, el Municipio aceptó proveer los servicios de recogido de desperdicios sólidos de dicho proyecto.

Así las cosas, el 13 de junio de 1994, ARPE expidió el permiso de urbanización solicitado por Ciudad Real.

Para julio de 1994, el ingeniero Velázquez finalizó el estudio hidrológico requerido por el DRN para endosar la totalidad del proyecto. Éste recomendó la construcción de una charca de retención pluvial dentro de los límites del proyecto para ampliar una depresión natural existente en el área y así acomodar las aguas pluviales que discurrirían del proyecto hacia dicha depresión.

Luego de analizar los resultados del estudio, el 11 de agosto de 1994, el DRN endosó el proyecto en su totalidad indicando que el diseño del sistema de control de inundaciones y de desagüe pluvial a construirse debía

---

[2] *Véase* Reglamento de Planificación Núm. 3 de 26 de noviembre de 1992, sobre Lotificación y Urbanización, 23 R.P.R. § 3281 *et seq*..

tomar en consideración el referido estudio hidrológico. Asimismo, indicó que el proyecto debía presentarse a la consideración del Municipio y de la Defensa Civil a los fines de concientizar y enfatizar en el mantenimiento y conservación apropiado del área de retención de escorrentías.

Ciudad Real enmendó los planos de construcción para que se incluyeran las recomendaciones del estudio hidrológico. A estos fines, eliminó 54 unidades de vivienda y utilizó el área para la construcción de la charca de retención pluvial. Sin haber presentado el proyecto enmendado al Municipio ni a la Defensa Civil, el 15 de diciembre de 1994, Ciudad Real solicitó ante ARPE, la aprobación del plano enmendado y el permiso de urbanización revisado. En su solicitud, incluyó el plano de urbanización enmendado, el estudio hidrológico y la carta del DRN aprobando el mismo.

El 30 de diciembre de 1994, ARPE aprobó el permiso de urbanización revisado que incluía la construcción de la charca de retención. Inmediatamente, Ciudad Real comenzó la construcción de la urbanización incluyendo la charca de retención pluvial. Construida la charca, el diseñador del proyecto, el señor José A. Meléndez, envió una carta al Municipio informándole sobre la enmienda a los planos. Junto a dicha comunicación, Ciudad Real adjuntó copias del estudio hidrológico y de los planos de construcción enmendados.

Así las cosas, el 5 de abril de 1995, ARPE aprobó el Plano de Inscripción Parcial de las calles y la charca de retención de la Urbanización Ciudad Real a favor del Municipio. Conforme a ello, Ciudad Real envió al Municipio una misiva para que considerara y aprobara los documentos y planos relacionados a la segregación, liberación y cesión de las parcelas de terrenos para uso público, tales como las calles, paseos peatonales y la charca de retención a favor del Municipio de Vega Baja.[3]

No obstante, el Municipio se negó a suscribir la referida escritura y se negó a aceptar la responsabilidad de operación y mantenimiento de la charca de retención. En síntesis, expresó que a la fecha en que el Municipio endosó el proyecto original, los documentos y planos presentados ante su consideración no incluían la charca de retención.

En razón de ello, el 11 de enero de 1996, el Municipio solicitó a ARPE que determinara cuál era la agencia responsable del mantenimiento de la charca de retención, dada su posición de no aceptar la titularidad de la servidumbre en cuestión. Por su parte, ARPE indicó al Municipio que, a tenor con la sección 4.02 del Reglamento sobre Servidumbres de Paso de Alcantarillados o Desagüe Pluvial, era responsabilidad del Municipio

---

[3] Los documentos enviados fueron un Proyecto de Escritura de Segregación, Liberación y Cesión de Terrenos para Uso Público, la copia del Plano de Inscripción Parcial y la Resolución de ARPE aprobando la segregación y cesión de dichas parcelas.

mantener el sistema de desagüe pluvial incluyendo la charca de retención, una vez se constituía legalmente la servidumbre de desagüe pluvial del proyecto.[4]

Ante la negativa del Municipio de aceptar la charca como parte de la servidumbre de desagüe pluvial, Ciudad Real presentó un recurso de interdicto preliminar y sentencia declaratoria ante el TPI. Solicitó al foro de instancia que ordenara al Municipio otorgar la escritura de cesión y aceptación de la charca de retención como parte del sistema de desagüe pluvial del proyecto.[5]

Estando este asunto pendiente ante la consideración del foro primario, el 26 de junio de 1996, Ciudad Real preparó una Instancia Registral para inscribir el derecho de servidumbre sobre la charca de retención a favor del Municipio. La misma fue presentada ante el Registro de la Propiedad el 1 de julio de 1996.

Después de varios trámites procesales, el TPI citó a las partes a una vista con el fin de dilucidar la titularidad de la charca. El día de la vista, el foro primario emitió una Resolución en la que resolvió que el

---

[4] Mientras tanto, el 2 de febrero de 1996, un grupo de residentes de la Comunidad Brisas de Tortuguero presentó una demanda contra Ciudad Real, su aseguradora, el DRN, la Junta de Calidad Ambiental, la Junta de Planificación, la Autoridad de Acueductos y Alcantarillados y ARPE. Solicitaron al tribunal que concediera un interdicto para corregir las inundaciones que sufría su comunidad, alegadamente provocadas por el desarrollo del proyecto de Ciudad Real.

[5] El TPI ordenó la consolidación de dicho caso con el de los residentes de la Comunidad Brisas de Tortuguero.

Municipio no se podía considerar titular de la charca porque no endosó la construcción de la misma como parte del proyecto y, refirió el resto del caso a ARPE para que se agotaran los remedios administrativos. Ordenó, además, que ARPE reexaminara la concesión del permiso de construcción y que determinara si Ciudad Real actuó conforme a las recomendaciones dispuestas en el permiso y realizó la construcción de la charca de forma adecuada y diligente.[6]

Inconforme, Ciudad Real acudió ante el Tribunal de Circuito de Apelaciones (en adelante, "TCA") alegando que había errado el foro sentenciador al desestimar su demanda. El TCA concluyó que el foro revisado erró al desestimar la solicitud de sentencia declaratoria instada por Ciudad Real, y revocó la sentencia apelada por entender que el titular de la charca lo era el Municipio y como tal, le correspondía su mantenimiento.

Insatisfecho con el curso decisorio adoptado por el TCA, el Municipio acude ante este Tribunal formulando los siguientes señalamientos de error:

> PRIMER ERROR
> Erró el Honorable Tribunal de Circuito de Apelaciones en la apreciación de la prueba al concluir que la parte recurrida solicitó el 15 de diciembre de 1994 la aprobación del plano enmendado que incluía la charca de retención y la emisión del permiso de urbanización enmendado.

---

[6] En cuanto a la demanda presentada por los residentes de la Comunidad Brisas de Tortuguero, el TPI la desestimó sin perjuicio.

SEGUNDO ERROR
Erró el Honorable Tribunal de Circuito de Apelaciones al concluir que las actuaciones del Municipio de Vega Baja demuestran una clara inacción del Municipio.

TERCER ERROR
Erró el Honorable Tribunal de Circuito de Apelaciones al concluir que no era necesario el endoso del Municipio como condición para aceptar la titularidad y darle mantenimiento a la charca de retención.

Mediante Resolución de 3 de diciembre de 1999 expedimos el auto solicitado. Contando con el beneficio de la comparecencia de ambas partes, estamos en posición de resolver.

II

Por la naturaleza de los señalamientos de error, comenzamos con la discusión del tercero ya que, de ser el endoso un requisito indispensable para la adquisición de la servidumbre legal y la consecuente obligación de mantenimiento, no será necesario discutir los restantes.

En general, el derecho de servidumbre se puede definir como uno subjetivo, de carácter real y perpetuo, que concede un poder para obtener un goce o utilidad de un fundo en beneficio de otro fundo ajeno. Así, en el Artículo 465 del Código Civil de Puerto Rico, 31 L.P.R.A. § 1631, se define la servidumbre predial como "un gravamen impuesto sobre un inmueble en beneficio de otro perteneciente a distinto dueño." En este tipo de servidumbres, el beneficiario de la misma resulta serlo el dueño del predio dominante.

La situación es distinta en las servidumbres de naturaleza personal, las cuales no dependen de la existencia de un predio dominante para su aprovechamiento. Éstas simplemente gravan un predio a favor de una persona o de una comunidad. Por ello, el Artículo 466 de nuestro Código Civil, 31 L.P.R.A. § 1632, complementa la definición de lo que constituye una servidumbre al disponer que también se pueden establecer "[s]ervidumbres en provecho de una o más personas o de una comunidad, a quienes no pertenezca la finca gravada." *Véase además*, *Soc. de Gananciales v. Municipio de Aguada*, 144 D.P.R. 114 (1997). Así, este tipo de servidumbre constituye propiamente la atribución a una[s] persona[s], con eficacia real, de cualquier utilidad parcial y determinada que un predio sea susceptible de determinar. José Puig Brutau, Fundamentos de Derecho Civil, Tomo III, Volumen 2, Ed. Bosch, 3era edición, Barcelona, a las págs. 427-428.

De otra parte, las servidumbres pueden ser voluntarias o legales, por razón de su origen. Artículo 472 del Código Civil, 31 L.P.R.A. § 1638. Mientras que las primeras dependen de la voluntad de los propietarios, las segundas son aquellas cuyo título de constitución es la ley y, por lo tanto, el dueño del predio destinado a sufrirlas no puede impedir su nacimiento. Los principios generales que gobiernan las servidumbres legales se

encuentran en el Código Civil, desde el Artículo 485 en adelante.  31 L.P.R.A. sec. 1701 *et seq.*.[7]

Según el Artículo 485, *supra*, las servidumbres legales se pueden distinguir por su objeto, y clasificarse como de utilidad pública o de interés particular, para determinar el cuerpo de normas aplicables a cada caso.  **Todo lo concerniente a las servidumbres establecidas para utilidad pública o comunal se rige por las leyes y reglamentos especiales que las determinan y, en defecto de éstas, por las disposiciones del Código Civil relativas a las servidumbres en general**. Art. 486 Código Civil, *supra*.[8]  En cambio, en las servidumbres legales establecidas en interés de los particulares, rigen las disposiciones del Código Civil siempre y cuando no sean contrarias a las disposiciones de las leyes y los reglamentos especiales sobre la

---

[7] En *Paoli Méndez v. Rodríguez*, 138 D.P.R. 449 (1995), expresamos que las servidumbres legales caen dentro del ámbito del derecho administrativo ya que éstas no constituyen propiamente verdaderas servidumbres. Éstas, a diferencia de lo que ocurre con las de naturaleza predial, no se caracterizan por la idea de sujeción de un predio a otro.  Todos los predios que se hallen en una determinada condición habrán de guardar las prescripciones legales, sin que el sacrificio que imponga deba ser indemnizado.

[8] En sus comentarios del Art. 550 del Código Civil español, equivalente a nuestro Art. 486, *supra*, Manresa expresa que "[l]a aplicación del Derecho positivo a las servidumbres de esta clase ha de hacerse teniendo las leyes y los reglamentos especiales, en cada servidumbre particular, el carácter de derecho principal o de primer grado, y el presente título el de derecho supletorio." J.A. Manresa, IV Comentarios al Código Civil Español, 1951, a la pág. 736.

materia.    Art. 487 Código Civil, 31 L.P.R.A. § 1703.[9]
*Borges v. Registrador,* a la pág. 126; *Véase además*, *Paoli Méndez v. Rodríguez*, 138 D.P.R. 449 (1995).

Así, en nuestro ordenamiento jurídico, el legislador se ocupó de las servidumbres legales de utilidad pública en general, al aprobar la Ley Núm. 143 de 20 de julio de 1979, 27 L.P.R.A. § 2151 *et. seq.*, también conocida como Ley de Servidumbres de Servicio Público de Paso (en adelante, "Ley Núm. 143"). La sección 1 de la Ley Núm. 143, *supra*, dispone que serán de carácter legal, continuas y aparentes las servidumbres de servicio público de paso de energía eléctrica, de paso de líneas telefónicas y de instalaciones de acueductos y alcantarillados pluviales y sanitarios. 27 L.P.R.A. § 2151.

Como mencionáramos anteriormente, el carácter legal de la servidumbre implica que el dueño del predio sirviente no tiene opción en cuanto a la constitución de

---

[9] En *Borges v. Registrador*, 91 D.P.R. 112, 124 (1964), establecimos que la diferenciación entre las servidumbres legales establecidas en interés público y las establecidas en interés privado "[e]s un poco artificiosa y no podemos tomarla muy al pie de la letra." El "[d]erecho privado, aunque aparentemente trata del interés de los particulares, existe porque la experiencia ha demostrado que conviene para la vida en sociedad y para la paz en general que las materias que comprende estén de antemano ordenadas por normas coercitivas." *Id.* a la pág. 124-125. Esto es, "[l]as servidumbres de utilidad privada están establecidas siempre por una razón de interés general, toda vez que el legislador ha experimentado la necesidad de limitar y ordenar la libertad de los particulares[...] y conciliar por tal modo los derechos e intereses opuestos." *Id.* a la pág. 125.

la misma; su consentimiento no es requisito indispensable para la constitución de la servidumbre.[10] *Borges v. Registrador*, *supra*, a la pág. 123.

El carácter de continua y aparente incide sobre los posibles modos de adquisición del derecho real. La sección 2 de la Ley Núm. 143, *supra*, establece que las servidumbres legales "[p]odrán ser adquiridas por cualquier medio legal de adquirir la propiedad en virtud de documento privado o escritura pública, o por prescripción adquisitiva de veinte (20) años, o por expropiación forzosa." 27 L.P.R.A. § 2152. Esta sección dispone, además, que también serán aplicables los principios generales sobre servidumbres continuas y aparentes contenidos en el Código Civil. Tenemos pues, que en materia de adquisición de una servidumbre legal, los modos de adquisición son aquellos listados en la sección 2 de la Ley Núm. 143, *supra*, según regulados en los artículos 465 al 484 de nuestro Código Civil.

A pesar de no ser de inscripción constitutiva, el procedimiento de inscripción de estas servidumbres se diferencia de la inscripción de cualesquiera otros derechos reales en virtud de la Ley Núm. 143, *supra*. Para inscribir una servidumbre legal, no es necesario presentar una escritura pública en el Registro de la

---

[10] El dueño del predio sirviente no queda desprovisto de remedio; según los reglamentos aplicables, la servidumbre debe constituirse por los lugares donde sea menos oneroso y en los casos en que constituya una incautación será necesario indemnizar al propietario. *Véase* sección 2 de la Ley Núm. 143, *supra*.

Propiedad, cuando se constituye como parte de proyectos de construcción de edificios o de urbanizaciones en que por la finca principal o los solares afectados discurren o se requiere instalar servicios públicos, como el caso de alcantarillado o de desagüe pluvial. En tales casos, basta "[l]a presentación en el registro de la propiedad de una certificación mediante la cual se acredite cada una de las servidumbres, para ser inscritas como gravámenes en el libro del registro de la propiedad expedida por el funcionario o empleado autorizado de las instrumentalidades gubernamentales o de los municipios, según sea el caso." Ley Núm. 143, *supra*, sección 4, 27 L.P.R.A. sec. 2154 (Supl. 2001), según enmendada. Además, la Ley Núm. 143, *supra*, requiere junto a la certificación, la presentación del:

> "[p]lano que demuestre gráficamente la trayectoria y extensión de la servidumbre constituida, y donde consten las fincas registradas afectadas, **endosado o aprobado por la agencia gubernamental o municipio adquirente del derecho de servidumbre**, y el documento privado autenticado ante notario, mediante el cual el titular del predio sirviente cede el derecho de servidumbre a favor de la entidad pública o municipio en cuestión, conforme a dicho plano y el consentimiento prestado posteriormente por el adquirente del derecho a dicho traspaso." *Id*.

Esta sección dispone además que la certificación cumpla con todos los principios registrales.[11]

---

[11] La sección dispone que "[e]n las certificaciones expedidas por las entidades públicas o municipios concernidos y en el registro de la propiedad se harán
continúa...

Del anterior precepto legal, resulta meridianamente claro que el endoso del plano por parte del Municipio es necesario para que pueda inscribirse la servidumbre aquí concernida.    Aunque, ciertamente, ello se refiere simplemente a los supuestos en que se desee inscribir el derecho de servidumbre en el Registro, como explicaremos más adelante, el endoso del Municipio a los planos de construcción de una servidumbre pluvial también es necesario para que se pueda constituir válidamente dicha servidumbre cuando se realicen variaciones en la trayectoria de la misma.

Sobre las normas para la constitución, uso y disfrute y mantenimiento, nuestra Asamblea Legislativa autorizó a las entidades públicas que rinden los servicios relativos a las servidumbres legales antes mencionadas, a promulgar reglamentos para regir el uso y disfrute de éstas, de conformidad con las necesidades de cada servicio.  *Véase* sección 3 de la Ley Núm. 143, 27 L.P.R.A. § 2153.[12]   Este precepto legal autorizó a la

_____

... [11] continuación

constar específicamente las fincas o los solares afectados, incluyendo la descripción y datos registrales de tales propiedades, la naturaleza y tipo de servidumbre, el titular del derecho, que el transmitente y el adquirente han prestado su consentimiento a tal cesión, y los demás datos necesarios a tenor con [la Ley Hipotecaria y del Registro de la Propiedad de 1979, 30 L.P.R.A. §§ 2001 *et seq*.

[12] Debemos recordar que la servidumbre de desagüe pluvial se rige primero por las disposiciones de la Ley

Junta de Planificación, sujeto a la aprobación del Gobernador, a adoptar las reglas y reglamentos que regirán el uso y disfrute de la servidumbre aquí concernida, de servicio de desagüe pluvial, que deben ofrecer los municipios de Puerto Rico. *Id.*

Así, el Reglamento sobre Servidumbres de Paso de Alcantarillado y Desagüe Pluvial, 23 R.P.R. § 1.03 *et seq.*, (en adelante, "el Reglamento") fue adoptado en armonía con las disposiciones de la Ley Núm. 143, *supra*, teniendo como objetivo establecer una forma sencilla de constituir e inscribir las servidumbres de alcantarillado y desagüe pluvial a nombre de los municipios. Mediante este Reglamento se aspira a beneficiar al consumidor con la simplificación de los trámites, al reducir los costos en que incurren los urbanizadores al desarrollar sus proyectos. *Véase* <u>Introducción</u> del Reglamento, *supra*.

El Reglamento define el servicio de alcantarillado y desagüe pluvial como la recolección y disposición de las aguas pluviales en áreas con desarrollo de tipo urbano. La provisión adecuada de este servicio requiere la instalación de alcantarillas, colectoras, canales, y demás instalaciones accesorias a través de fincas, solares, calles y otras áreas públicas. Para viabilizar

---

... 12 continuación

Núm. 143; en segundo lugar, por el Reglamento antes citado y en ausencia de disposiciones aplicables por lo establecido en nuestro Código Civil. Por tanto, es necesario analizar el Reglamento para ver si hay disposiciones específicas aplicables a la controversia ante nos.

la instalación y el mantenimiento adecuado de estos sistemas de alcantarillado pluvial y, asegurar así un servicio eficiente, se ha hecho necesario establecer servidumbres a lo largo del sistema, para que la entidad a cargo-entiéndase el Municipio-tenga derecho de acceso para operar y mantener el mismo. Por ello, la sección 2.18 del Reglamento define la servidumbre pluvial como aquella franja de terreno a ser utilizada para la instalación y conservación del sistema de alcantarillado o desagüe pluvial, **descrita gráficamente en los planos de inscripción y sujetas a las disposiciones del Reglamento.**

Por su parte, las secciones 3.00 a la 3.11 del Reglamento estatuyen claramente el procedimiento que deberá seguirse en la constitución de las servidumbres pluviales. En particular, el Reglamento aborda la situación que emana de la necesidad de variar la trayectoria de las líneas indicadas en los planos sometidos y aprobados por ARPE con anterioridad a la construcción del sistema de alcantarillado pluvial objeto de la servidumbre. Según la sección 3.08 del Reglamento:

> "[s]erá obligación de éstos [los propietarios, proyectistas o urbanizadores] someter a la [ARPE], con el **endoso del municipio**, a más tardar dentro de quince (15) días antes de efectuar la variación, un plano oficial enmendado que refleje, gráficamente y a escala, dicha variación en trayectoria, la cual, necesariamente conservará los anchos mínimos para la franja de servidumbre e indicará los sitios específicos en que se ubiquen las instalaciones."

Del anterior precepto, queda claramente reflejado que el endoso del Municipio para la aprobación de una variación a una servidumbre pluvial es de carácter indispensable. No obstante, es menester aclarar que la negativa por parte de un Municipio a endosar la variación de la servidumbre legal, no puede ser arbitraria ni caprichosa; ésta deberá estar razonablemente justificada. Ningún municipio podrá negarse a endosar un proyecto, si el mismo se encuentra en conformidad con lo dispuesto por las leyes y reglamentos de las agencias encargadas de aprobar los permisos, así como tampoco podrá modificar las condiciones impuestas por éstas.

Como se sabe, cuando se intenta constituir, como parte de un proyecto de urbanización, una servidumbre legal de naturaleza pluvial, existen unos procedimientos que se tienen que seguir. Como parte de éstos, toda solicitud de aprobación, autorización o permiso de uso o construcción deberá notificarse al Municipio para que éste tenga la oportunidad de evaluarlo y presentar su posición al respecto. *Véase* Ley de Municipios Autónomos, 21 L.P.R.A. § 4616. Sobre el particular, la Ley de Municipios Autónomos, *supra*, expresa que:

> Una vez un Municipio tenga en vigor un Plan de Ordenación pero no se le hayan transferido facultades de ordenación territorial, de acuerdo a lo dispuesto en la sec. 4610 de este capítulo, toda solicitud de aprobación, autorización o permiso de uso o construcción [...] **deberá notificarse, mediante copia del documento de que se trate, al municipio que corresponda para que éste tenga la**

> **oportunidad de evaluarlo y presentar su posición al respecto.** Dicha notificación deberá efectuarse dentro del plazo de diez (10) días de radicarse la solicitud. **El Municipio someterá sus comentarios, mediante carta certificada, a la Junta de Planificación o a la Administración de Reglamentos y Permisos, según corresponda, en un plazo que no excederá de quince (15) días, contados a partir de la fecha que tenga conocimiento de la radicación de la solicitud....**

De esta manera, se garantiza la participación del Municipio en todos aquellos procedimientos de aprobación de permisos de desarrollo o construcción cuyas determinaciones puedan afectarle directamente, incluyendo la constitución de servidumbres pluviales como parte del proyecto.

Así también, en los casos en que se proponga una <u>variación</u> en la trayectoria de la servidumbre pluvial <u>previamente aprobada</u>, la participación del Municipio se encuentra garantizada mediante el requerimiento del endoso a los planos enmendados. *Véase* Sección 3.08 del Reglamento, *supra*.[13] Lo anterior, promueve un adecuado balance entre la agilidad y eficiencia en los procedimientos de aprobación de permisos y la participación efectiva del Municipio en aquellos asuntos que afecten su desarrollo físico o que comprometan

---

[13] Ello es cónsono con el mandato expreso legislativo de que la Junta de Planificación establezca, mediante Reglamento, "los mecanismos y procedimientos adicionales que promuevan la participación efectiva de los municipios en todos los asuntos que afecten su desarrollo físico o que conlleven determinaciones que comprometan sustancialmente los recursos municipales." *Véase* sección 4616 de la Ley de Municipios Autónomos, *supra*.

sustancialmente sus recursos. De no cumplirse con el procedimiento legalmente establecido, el Municipio podrá negarse a asumir la titularidad de la servidumbre legal en cuestión y las obligaciones que se deriven del mantenimiento de la misma.

Por otro lado, el Reglamento también dispone que la servidumbre pluvial podrá ser adquirida según lo establecido en las secciones 1 y 2 de la Ley Núm. 143, *supra*, y por cualquier medio legal de adquirir la propiedad, en virtud de documento privado o escritura pública, o por prescripción adquisitiva de 20 años, o por expropiación forzosa, que son los medios de adquirir servidumbres en general bajo nuestro Código Civil. *Véase* sección 3.05 del Reglamento, *supra*.

Por su parte, la sección 4 del Reglamento explica la extensión de los derechos y obligaciones constituidos por la servidumbre. La sección 4.01 discute el derecho de acceso; la sección 4.02 impone la obligación de mantenimiento; la 4.03 dispone que el proyectista, propietario o urbanizador podrá realizar otras actividades sobre las servidumbres pluviales, con el consentimiento del municipio, y siempre que sean comparables, en grado razonable con un sistema eficiente de alcantarillado y desagüe pluvial a la comunidad; y la sección 4.04 impone la responsabilidad del municipio de restituir el suelo a la condición original. Por último, la sección 5.00 del Reglamento establece las

restricciones que deben observar los propietarios, urbanizadores y proyectistas en caso de violación. En general, está prohibido realizar cualesquiera obras y/o actividades incompatibles con el uso y disfrute de las servidumbres pluviales. Dispone, además, que la violación por cualquier persona a las disposiciones de este Reglamento será penalizada según lo dispuesto en la Ley Núm. 143, *supra*.

En fin, tenemos que para válidamente constituir una servidumbre legal de alcantarillado y desagüe pluvial a favor de algún municipio, es necesario cumplir con todas las disposiciones de la Ley Núm. 143, *supra*, del Reglamento promulgado al amparo de ésta, y del Código Civil, como fuente de derecho supletorio. Además, para que un Municipio adquiera válidamente la titularidad de una servidumbre legal es necesario el consentimiento prestado por éste mediante un documento privado, escritura pública, o mediante cualquier medio legal de adquirir propiedad. *Véase* sección 3.05 del Reglamento, *supra*.

No es hasta constituida válidamente la servidumbre de alcantarillado y desagüe pluvial, que comienzan tanto la obligación del propietario de tolerar el uso del terreno, como la obligación del Municipio de dar mantenimiento para el funcionamiento del sistema de desagüe pluvial. *Id*. a las secciones 4 y 5. Según surge de la totalidad del Reglamento y de la Ley Núm. 143,

*supra*, no queda al arbitrio de los desarrolladores, propietarios o urbanizadores, la localización y estructuras a utilizarse en dicha servidumbre. Por ello, es menester el previo endoso del Municipio a cualesquiera variaciones que sean efectuadas a la servidumbre pluvial, como queda reflejado en la Sec. 3.08 del Reglamento y la Ley Núm. 143, *supra*, secciones 2 y 4, al hacer aplicable las disposiciones del Código Civil sobre la constitución de servidumbres, y al requerir el endoso para su inscripción en el Registro de la Propiedad.

Conforme al marco jurídico previamente expuesto, resolvemos la controversia ante nos.

III

Examinada la situación que se nos presenta en el caso de autos, vemos que el TCA resolvió que el Municipio era responsable de las obligaciones impuestas por el derecho de servidumbre pluvial. Según el TCA, la servidumbre legal del presente caso es de constitución automática a favor del Municipio, una vez la Junta de Planificación y ARPE conceden los permisos de construcción correspondientes. Luego de examinar tanto la Ley Núm. 143, *supra*, como el Reglamento, que contiene disposiciones sobre la constitución, uso, disfrute, mantenimiento y restricciones de estas servidumbres, concluimos que erró el foro apelativo intermedio en su determinación. **El derecho real que aquí nos concierne no es de constitución automática; es decir, requiere obtener**

**el endoso o consentimiento del Municipio para crearse válidamente.** Aunque, como mencionáramos en el acápite anterior, la oposición a prestar su endoso no podrá ser arbitraria ni caprichosa. Veamos.

Al examinar el diseño original del sistema de desagüe y alcantarillado en el proyecto de Ciudad Real, éste no contenía la construcción de la charca de retención, según consta en la Consulta de Ubicación Número 92-09-0951, aprobada por la Junta de Planificación el 29 de abril de 1993. Para solicitar el consentimiento del Municipio, Ciudad Real le presentó dos grupos de planos: el Plano de Construcción y el Plano de Desarrollo Preliminar. Estos planos no incluían disposición alguna sobre la construcción de una charca de retención. Bajos esas condiciones, el Director de la Oficina de Ingeniería del Municipio de Vega Baja endosó el proyecto el 30 de marzo de 1993.

En la etapa posterior del proyecto, cuando ARPE aprobó mediante Resolución el plano de Desarrollo Preliminar el 4 de julio de 1993, no hubo mención de una charca de retención, auque ARPE sí requirió que el DRN estudiara y aprobara el diseño específico del sistema de desagüe pluvial. Entonces, Ciudad Real contrató los servicios del ingeniero Iván Velázquez para efectuar el estudio hidrológico del área en que se estaba desarrollando el proyecto Ciudad Real. Como resultado del informe entregado en julio de 1994, Ciudad Real

presentó una solicitud de Permiso de Urbanización Revisado, el cual incluía la charca de retención, según había sido recomendado en el estudio hidrológico y requerido por el DRN. Posteriormente, el 30 de diciembre de 1994, ARPE aprobó, conforme las recomendaciones suscritas por el DRN, el Permiso de Urbanización revisado, el cual indicaba la construcción de una charca de retención como parte del sistema de desagüe pluvial del proyecto Ciudad Real. En noviembre de 1995, ARPE aprobó un Plano de Desarrollo Preliminar Alterno, el cual incluía la charca de retención.

No es hasta el 17 de febrero de 1997, cuando el proyecto está por terminar y la charca de retención está completada, que el ingeniero José A. Méndez informó al Municipio de Vega Baja de la aprobación por parte de ARPE de la charca de retención.

Ante todo lo anterior, resulta evidente que el Municipio no emitió endoso alguno previo a la aprobación por ARPE de la variación del sistema de desagüe pluvial, según requerido por la sección 3.08 del Reglamento, *supra*. Como acotáramos en las secciones precedentes, cuando surgen variaciones en las trayectorias de los desagües pluviales, es obligación de los proyectistas o urbanizadores **el someter a ARPE, con el endoso del Municipio, un plano enmendado que refleje gráficamente y a escala dicha variación en trayectoria** como requisito indispensable para la constitución de la servidumbre.

En consecuencia, el Municipio tampoco tuvo la oportunidad de revisar el estudio hidrológico que recomendaba la construcción de la charca de retención ni le fue notificada la Resolución de ARPE aprobando el plano enmendado. Ciertamente, la participación del Municipio en estos procesos les hubiese ayudado a tomar una decisión mejor informada. Además, no podemos perder de perspectiva que una vez tomada la decisión de aprobar un plano de construcción es al Municipio quien le corresponde atender los posibles problemas, consecuencias y efectos de las decisiones tomadas. **Por ello, un Municipio puede negarse a asumir la responsabilidad de mantenimiento de una servidumbre pluvial en aquellos casos que no se cumplió con el procedimiento estatuido en la Ley Núm. 143 y el Reglamento.**

En virtud de no haberse constituido válidamente la servidumbre pluvial y al no ser el Municipio de Vega Baja responsable por el mantenimiento de la charca de retención, erró el Tribunal de Circuito de Apelaciones al dictar la sentencia declaratoria a favor de Desarrollos de Ciudad Real, S.E..

Por los fundamentos anteriormente expuestos, revocamos la Sentencia del Tribunal de Circuito de Apelaciones de 30 de julio de 1999, en cuanto resolvemos que el Municipio no es el titular de la charca de retención ni tiene la obligación de mantenerla debido a que no se le consultó ni notificó oportunamente de la

variación en el proyecto que la incorpora ni endosó su construcción para constituirla válidamente como parte de la servidumbre pluvial. Recalcamos, además, que a menos que el Municipio de Vega Baja válidamente preste su consentimiento para asumir la responsabilidad del mantenimiento de la charca de retención, los demandantes aquí recurridos, Desarrollos de Ciudad Real, S.E., son responsables por el mantenimiento de la charca objeto de la presente controversia.

Se dictará sentencia de conformidad.


BALTASAR CORRADA DEL RÍO
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

```
Desarrollos de Ciudad Real S.E.  *
                                 *
        Recurrida               *
                                 *
              v.                 *          CC-1999-762
                                 *
Municipio de Vega Baja           *
                                 *
        Peticionario             *
                                 *          Certiorari
José A. Cubano Torres, et al.    *
                                 *
        Codemandados             *
******************************* *
José A. Cubano, et al.           *
                                 *
        Demandantes              *
                                 *
Corp. Desarrollo Ciudad Real,    *
et al.                           *
                                 *
        Recurrida                *
******************************* *
```

SENTENCIA

San Juan, Puerto Rico, a 29 de enero de 2004.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente, se revoca la Sentencia del Tribunal de Circuito de Apelaciones de 30 de julio de 1999, en cuanto resolvemos que el Municipio no es el titular de la charca de retención ni tiene la obligación de mantenerla debido a que no se le consultó ni notificó oportunamente de la variación en el proyecto que la incorpora ni endosó su construcción para constituirla válidamente como parte de la servidumbre pluvial. Recalcamos, además, que a menos que el Municipio de Vega Baja válidamente preste su consentimiento para asumir la responsabilidad del mantenimiento de la charca de retención, los demandantes aquí recurridos, Desarrollos de Ciudad Real, S.E., son responsables por el mantenimiento de la charca objeto de la presente controversia.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.


                              Patricia Otón Olvieri
                            Secretaria del Tribunal Supremo