Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel XII

| JEMN INVESTMENT, INC.<br>Apelante<br><br>V.<br><br>QUINTAS DEL REY, INC.<br>MUNICIPIO DE SAN GERMÁN<br>Apelados | TA2025AP00424 | *Apelación* procedente del Tribunal de Primera Instancia Sala de Mayagüez<br><br>Civil Núm. SG2023CV00525<br><br>Sobre: Cesión de Calles |
| --- | --- | --- |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli

Adames Soto, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 12 de enero de 2026.

Comparece Jemn Investment, Inc. (Jemn o apelante), a través de recurso de *apelación,* solicitando la revocación de una *Sentencia Parcial* expedida en su contra por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (TPI), el 24 de junio de 2025. Mediante dicho dictamen, el foro recurrido declaró *Ha Lugar* una *Moción de Sentencia Sumaria Parcial* presentada por una de las partes demandadas, el Municipio de San Germán (el Municipio o apelado). Al así decidir, el TPI desestimó la *Demanda* presentada por Jemn contra el Municipio, solo restando por dilucidarse la causa de acción contra el otro codemandado, Quintas del Rey Inc.

No obstante, Jemn juzga que, al desestimar la *Demanda* contra el Municipio, el foro recurrido "aplicó incorrectamente el derecho a los hechos, resolvió sumariamente aun existiendo hechos materiales en controversia y abusó de su discreción al descartar un balance justiciero y jurídico de la totalidad de la prueba".[1] Por ello, solicita como remedio que

---

[1] *Recurso de Apelación*, Entrada 1 de SUMAC (Apelaciones), Página 1.

"devolv[amos] el caso (al TPI) para que tenga la oportunidad de presentar mediante juicio plenario los hechos y la prueba que atraña".[2]

No obstante, examinada la totalidad del expediente, junto a los argumentos alzados por Jemn, decidimos *confirmar* la *Sentencia Parcial*, pues no apreciamos que existan hechos materiales en controversia, ni error en la aplicación del derecho.

## I. Resumen del tracto procesal

El asunto ante nuestra atención inició con la presentación de una *Demanda* por Jemn en contra del Municipio y Quintas del Rey, Inc. (Quintas del Rey).[3] Adujo que este último era el dueño y desarrollador de la urbanización Quintas del Rey (Urbanización), la cual fue luego adquirida por Jemn a través de venta judicial. Afirmó que Quintas del Rey había segregado y dedicado a uso público las calles de la Urbanización, sin embargo, nunca cedió dichas calles al Municipio, "como era indicado en la Autorización de ARPE y es solicitado por la Honorable Registradora de la Propiedad".[4] Alegó que, por cuanto las calles ya estaban segregadas al momento de la referida venta judicial, no había adquirido titularidad sobre estas. Aseveró, además, que el Municipio había asumido y ejercido el control sobre dichas calles, pues autorizó el control de acceso a la Urbanización. En definitiva, solicitó que se le ordenara a Quintas del Rey a traspasar las calles a favor del Municipio, o, en la alternativa, que se autorizara al Alguacil del Tribunal a comparecer en lugar de los demandados para otorgar la escritura correspondiente.[5]

Ante lo cual, el Municipio presentó *Contestación a Demanda.* En lo que concierne, de las alegaciones enumeradas en la *Demanda* admitió: nunca haber aceptado las calles de la Urbanización; que existía una resolución de ARPe[6] que indicaba que las calles debían ser cedidas al

---

[2] *Recurso de Apelación*, Entrada 1 de SUMAC (Apelaciones), Página 34.
[3] *Demanda*, Entrada Núm. 1 de SUMAC.
[4] Id., pág. 2.
[5] *Sentencia Parcial*, Entrada Núm. 54 de SUMAC.
[6] Administración de Reglamentos y Permisos de Puerto Rico.

Municipio; que el Municipio había autorizado el establecimiento de un control de acceso en la Urbanización. Por otra parte, negó que el Municipio tuviera control de las calles aludidas, afirmando que "el hecho que las calles hayan sido segregadas no significa que no le pertenezcan al demandante. Mientras no se cedan a otra parte, le pertenecen al demandante".[7] Por último, arguyó que el Municipio no estaba obligado a recibir las calles en las condiciones en que se encontraban.

Luego del Tribunal disponer de varios asuntos procesales, el Municipio presentó una *Moción de Sentencia Sumaria Parcial*. En esta, luego de identificar como controversia principal si el Municipio se encontraba obligado a aceptar las calles de la Urbanización como se encontraban, pasó a enumerar quince hechos, que promovió como materiales e incontrovertidos, aludiendo e incluyendo la prueba documental que los sostenían. En lo pertinente, sostuvo que no existía controversia sobre lo que sigue: que Quintas del Rey, Inc. segregó y dedicó a uso público las calles 1-10 de la Urbanización mediante escritura pública; que dicha segregación se hizo para cumplir con una resolución de la ARPe; que tales calles se dedicaron al uso público; que Jemn había adquirido la Urbanización con posterioridad a la referida segregación de las calles; que, mediante resoluciones emitidas por la Legislatura Municipal entre 2004 y 2007, se autorizó al Municipio a recibir las calles, pero el Municipio nunca otorgó la correspondiente escritura de cesión, ni adquirió la titularidad de las calles de la Urbanización; que, en el 2020 y el 2024, el Municipio hizo evaluaciones periciales del estado de las calles de la Urbanización con el propósito de aceptarlas, pero determinó que estaban en un estado crítico, debido a problemas de desagüe y falta de mantenimiento, por lo que decidió no aceptarlas, hasta tanto Jemn reparara y corrigiera todos sus defectos y deficiencias. Entonces, en la discusión de derecho, citando a *Desarrollos Real v. Mun. de Vega Baja,* 161

---

[7] *Contestación a Demanda,* Entrada 10 de SUMAC (Primera Instancia), Página 2.

DPR 160 (2014), esgrimió que "aunque en este caso no se trata de una servidumbre de alcantarillado pluvial, el Tribunal Supremo estableció claramente que para que un municipio se convierta en titular de una servidumbre de paso de uso público se requiere que voluntariamente la acepte mediante documento ante notario público, y no se le puede forzar a aceptar la servidumbre, especialmente cuando la no aceptación no es frívola o arbitraria". En definitiva, solicitó que se dictara *Sentencia Sumaria Parcial* desestimando la *Demanda* instada en su contra, y se resolviera que no estaba obligado a recibir las referidas calles en sus actuales condiciones.

En respuesta, Jemn presentó una *Moción en Oposición a Moción de Sentencia Sumaria Parcial.*[8] En la introducción insistió en que: nunca obtuvo titularidad sobre las calles segregadas, pues la segregación se llevó a cabo antes de que adquiriera el proyecto, quedando estas destinadas a uso público; el Municipio asumió el rol de dueño de las calles al permitir el establecimiento del control de acceso a la Urbanización, por lo que no se podía negar a aceptarlas de manera arbitraria. Luego de exponer asuntos de derecho que, a su juicio, merecían dilucidación, incluyó una lista de siete hechos "realmente incontrovertibles" en los que se dispuso a controvertir aquellos propuestos por el Municipio en la moción dispositiva, para entonces presentar una serie de hechos que propuso como incontrovertidos.

Esta misma parte esgrimió que el Municipio había incurrido en actos que constituían *aceptación tácita de las calles*.[9] Aceptó que existían desperfectos en las calles, pero atribuibles *al paso del tiempo, condiciones climatológicas, además de las instalaciones de utilidades aprobadas por el Municipio.*[10] Aun así, señaló que *el estado actual no puede considerarse un impedimento válido para la aceptación, ya que el propio Municipio había*

---

[8] Entrada Núm. 48 de SUMAC.
[9] *Sentencia Parcial,* Entrada 54 SUMAC (Primera Instancia), Página 3.
[10] *Moción en Oposición a Moción de Sentencia Sumaria Parcial*, Entrada 48 de SUMAC (Primera Instancia), Página 14.

*inspeccionado y aprobado dichas calles en etapas anteriores.*[11] Por lo cual, aseveró que el informe sobre las calles presentado por el Municipio, emitido pasados de trece (13) a dieciséis (16) años desde las evaluaciones originales que había hecho sobre las calles, representaba *un cambio arbitrario en los requisitos de aceptación.*[12] Por consiguiente, sostuvo que el Municipio había actuado caprichosamente al rehusar aceptar las calles, a pesar de que su Legislatura Municipal había emitido resoluciones de intención afirmativa y permitido el desarrollo del proyecto. Por todo ello, solicitó que se denegara la *Moción de Sentencia Sumaria Parcial.*

En su *Réplica a moción en oposición de sentencia sumaria[13]*, el Municipio señaló, entre otros, que Jemn se equivocaba al alegar que no era titular de las calles porque al momento en que adquirió el proyecto en el 2003, ya estas habían sido segregadas. Sobre esto explicó que, la segregación de un predio de terreno no traspasa su titularidad, sino que simplemente creaba una nueva finca, separada del predio del cual se segregó, pero cuyo titular era el mismo del predio remanente. Por ello, no es hasta que el predio segregado se traspasa a un tercero mediante escritura que cambiaba de dueño. En definitiva, al momento en que Jemn adquirió el proyecto, las calles no habían sido traspasadas, y al presente no han sido traspasadas, por lo que Jemn las adquirió y es su titular. También elaboró sobre: los informes periciales donde se indicaba las malas condiciones en que se encontraban las calles; el requerimiento del Registro de la Propiedad en presentar escritura pública para inscribir las calles; discusión sobre la jurisprudencia citada y sentencias previas de este Tribunal de Apelaciones en casos análogos.

Lo anterior supuso la presentación de una *Dúplica a réplica[14]* por parte de Jenm. Fueron dos los asuntos destacados por Jenm en esta ocasión: que, contrario a lo afirmado por el Municipio, las calles fueron

---

[11] *Sentencia Parcial,* Entrada 54 SUMAC (Primera Instancia), Página 3.
[12] *Sentencia Parcial,* Entrada 54 SUMAC (Primera Instancia), Página 3.
[13] Entrada Núm. 50 de SUMAC.
[14] Entrada Núm. 52 de SUMAC.

segregadas y dedicadas al uso público en el año 1999, pero no fue sino hasta el 2003 que adquirió los inmuebles mediante venta judicial, en cuyo momento ya estaban dedicadas al uso público; que las calles cumplieron con los requerimientos municipales cuando se expidieron inicialmente los permisos, y, pasados más de quince años, entonces se pretendía imponer nuevos requisitos para su aceptación; sobre el mismo tema, cuestionó el grado de deterioro de las calles aducido por el Municipio, afirmando que no era tan grave como se decía.

Es así como el TPI dictó la *Sentencia Parcial* cuya revocación se nos solicita, declarando *Ha Lugar* la *Moción de Sentencia Sumaria Parcial* presentada por el Municipio, por tanto, desestimando la causa de acción contra este. En su dictamen, luego de afirmar que no existían hechos materiales en controversia, el foro primario concluyó que: los municipios no adquieren automáticamente titularidad sobre calles o áreas comunales por el mero hecho de que estas hubiesen sido segregadas, construidas o dedicadas al uso público por el desarrollador, sino que para ello se requiere un acto afirmativo, claro e inequívoco, el cual suele formalizarse mediante escritura pública u otro acto de naturaleza jurídica que evidencie la intención del municipio de asumir la titularidad y responsabilidad de dichas áreas; que las diversas resoluciones legislativas emitidas por el Municipio entre 2004 y 2007, lo que hicieron fue autorizar al alcalde a aceptar determinadas calles, condicionado a que se completaran las inspecciones correspondientes y se verificara el cumplimiento con los requisitos técnicos, pero en ningún momento se evidenció que se hubiese perfeccionado tal aceptación mediante escritura pública o acto afirmativo equivalente; la propia parte demandante-apelante basó su decisión de demandar en la necesidad de obtener una escritura de cesión en la que el Municipio aceptara expresamente las calles para que la titularidad le fuera transferida.

En desacuerdo, Jemn presentó *Moción de Reconsideración y Solicitud de Enmienda a Determinaciones de Hecho,* que resultaron denegadas.

Inconforme, Jemn acude ante nosotros mediante recurso de *apelación* señalando la comisión de los siguientes errores:

**PRIMER ERROR:** Erró el TPI al dictar *Sentencia Parcial* cuando existe una controversia genuina de hechos materiales sobre los actos manifestativos de aceptación de las calles de la urbanización por parte del Municipio.

**SEGUNDO ERROR:** Erró el TPI al dictar *Sentencia Parcial* aplicando incorrectamente el derecho a los hechos al resolver una controversia sobre la transferencia de calles a favor del Municipio a base del derecho que rige los alcantarillados pluviales sanitarios.

**TERCER ERROR:** Erró el TPI al determinar que *Ciudad Real v. Municipio de Vega Baja*, 161 D.P.R. 160 (2004) resolvió que la aceptación municipal de la titularidad de calles requiere acto afirmativo, cuando dicho caso no dice eso y su controversia no es sobre calles, sino sobre una charca de retención como servidumbre pluvial y, en la alternativa, al determinar que no existe una obligación jurídica exigible por parte del Municipio en relación con la recepción y aceptación de las calles.

**CUARTO ERROR:** Erró el TPI cometiendo error manifiesto por abusar de su discreción al no considerar y/o rechazar de plano la *Solicitud de Enmiendas a las Determinaciones de Hechos* sin crear un balance justiciero y jurídico de la totalidad de la prueba presentada.

## II. Exposición de Derecho

### a. Sentencia Sumaria

La sentencia sumaria es un mecanismo procesal provisto por la Regla 36 de las Reglas de Procedimiento Civil que promueve la solución justa, rápida y económica de las controversias. 32 LPRA Ap. V, R. 36. La precitada regla permite a los tribunales disponer parcial o totalmente de litigios civiles en aquellas situaciones en las que no exista alguna controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *León Torres v. Rivera Lebrón*, 204 DPR 20 (2020); *Rodríguez García v. UCA*, 200 DPR 929 (2018); *Roldán Flores v. M. Cuebas*, 199 DPR 664 (2018); *Rodríguez Méndez v. Laser Eye*, 195 DPR 769 (2016); *Lugo Montalvo v. Sol Meliá Vacation Club*, 194 DPR 209, 225 (2015); *Meléndez González v. M. Cuebas*, 193 DPR 100 (2015). Bajo tales circunstancias, lo único que queda por parte del tribunal es aplicar el derecho. *Nieves Díaz v. González Massas*, 178 DPR 820, 847 (2010); *Lugo Montalvo v. Sol Meliá Vacation Club*, supra.

Al evaluar la conveniencia de conceder el recurso, se considera como un hecho esencial y pertinente aquel que puede afectar el resultado de la reclamación según el derecho sustantivo aplicable. *Ramos Pérez v. Univisión*, 178 DPR 200 (2010). Por tanto, al disponer de una moción de sentencia sumaria, el tribunal necesariamente tendrá que escudriñar las alegaciones de la demanda o las defensas interpuestas para determinar si existen hechos en controversia que deban esclarecerse mediante un juicio. *León Torres v. Rivera Lebrón, supra.*

Por su parte, la Regla 36.3 de Procedimiento Civil de 2009, detalla ciertos requisitos de forma con los que debe cumplir una solicitud de sentencia sumaria, al igual que su oposición. 32 LPRA Ap. V, R. 36.3. Entre estos, se encuentra la obligación de desglosar los hechos que se alega no están en controversia con referencia específica a la prueba admisible que los sustenta. Sobre lo anterior, el Tribunal Supremo de Puerto Rico ha manifestado que la parte que solicita la sentencia sumaria tiene que establecer su derecho con claridad y tiene que demostrar que no existe controversia sustancial sobre ningún hecho material. *Quest Diagnostics v. Municipio de San Juan*, 175 DPR 994 (2009). Es decir, que no existe controversia sobre ningún componente de la causa de acción. Mientras, la parte que se opone no puede descansar exclusivamente en sus alegaciones ni tomar una actitud pasiva. *Toro Avilés v. P.R. Telephone Co.*, 177 DPR 369 (2009). Por el contrario, tiene que controvertir la prueba presentada por la parte solicitante a fin de demostrar que sí existe controversia real sustancial sobre los hechos materiales del caso en cuestión. *González Aristud v. Hospital Pavía*, 168 DPR 127, 138 (2006).

La revisión que este Foro apelativo realizará de las sentencias sumarias se considera *de novo. Meléndez González v. M. Cuebas*, supra. Referente al estándar de revisión apelativa sobre una solicitud de sentencia sumaria, en esta misma Opinión el alto foro estableció que

este Tribunal de Apelaciones estará limitado a: (1) considerar los documentos y argumentos que se presentaron ante el foro primario (lo cual implica que, en apelación, los litigantes no pueden añadir prueba que no fue presentada oportunamente ante el tribunal de instancia ni esbozar nuevas teorías); (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) determinar si el derecho se aplicó de forma correcta. *Id.*

### b. Traspaso de bienes inmuebles por cesión a un municipio

El Artículo 9.002 de la Ley de Municipio Autónomos de Puerto Rico, vigente para la fecha de los hechos del caso, regulaba la adquisición de bienes por el Municipio. 21 LPRA § 4452. Este Artículo disponía lo siguiente:

> Los municipios podrán adquirir por cualquier medio legal, incluyendo expropiación forzosa, los bienes y derechos o acciones sobre éstos que sean necesarios, útiles o convenientes para su operación y funcionamiento o para el adecuado ejercicio de las funciones de su competencia y jurisdicción, de acuerdo a las disposiciones de esta ley.

Nuestro Tribunal Supremo ha llamado la atención a que, a diferencia de la contratación entre partes privadas, los preceptos legales que rigen las relaciones económicas entre entidades privadas y los municipios, están revestidos de un gran interés público y aspiran [a] promover una sana y recta administración pública". *Alco Corp. v. Mun. de Toa Alta,* 183 DPR 530 (2011); *Hatton v. Mun. de Ponce,* 134 D.P.R. 1001, 1005 (1994). Añadió el mismo alto foro que a los contratos con entidades gubernamentales se les examina su validez de acuerdo con los estatutos especiales, en lugar de acudir a las teorías generales de contratos, existiendo varios requisitos de forma que deben cumplirse al pactar acuerdos con los municipios, los cuales incluyen que se haya hecho constar por escrito. *Alco Corp. v. Mun. de Toa Alta,* 183 DPR 530 (2011); *Ocasio v. Alcalde Mun. de Maunabo,* 121 DPR 37 (1988). "La necesidad de que los contratos municipales consten por escrito tiene su base en [...] que es la mejor evidencia de las obligaciones recíprocas que contraen las

partes". *Alco Corp. v. Mun. de Toa Alta*, supra*,* pág. 538. De aquí que "habrá una obligación por parte del municipio únicamente cuando exista un contrato en virtud de un compromiso legalmente válido". Id., pág. 539.

A ello cabe añadir que, el Artículo 1232 del Código Civil de Puerto Rico de 1930, vigente al momento de los hechos, disponía que los actos que tuvieran por objeto la transmisión de derechos reales sobre bienes inmuebles se debían hacer mediante documento público. 31 LPRA § 3453.

### III. Aplicación del Derecho a los hechos

Según ya se ha advertido, la revisión de una sentencia sumaria emitida por el TPI a nivel apelativo acontece *de novo*. De este modo, debemos verificar primero si las partes cumplieron con los requerimientos de forma dimanantes de la Regla 36 de Procedimiento Civil, *supra*, para entonces verificar si hay o no hechos materiales en controversia, y, de resultar que no hubiesen hechos en controversia, examinar la aplicación del derecho correspondiente.

Hecho tal ejercicio, juzgamos que las partes cumplieron sustancialmente con los requerimientos formales que les imponen la Regla 36.3(a) y (b), respectivamente, *supra*, y que no existen hechos materiales en controversia que dilucidar en juicio plenario. Es decir, examinada la documentación incluida por las partes en la moción dispositiva y su oposición, determinamos que establece sin dificultad que el Municipio no ha suscrito escritura pública alguna aceptando las calles de la urbanización que la parte apelante desea sean inscritas en el Registro de la Propiedad.

Según resumimos de la moción de sentencia sumaria instada por el Municipio, este sostuvo nunca haber aceptado las calles de la Urbanización Quintas del Rey mediante escritura pública, por lo que estas no le pertenecen y sus reparaciones están bajo la responsabilidad del actual dueño, Jemn. El Municipio arguye ante nosotros, según lo hizo en el TPI, que no se negó a aceptar tales calles por motivos arbitrarios, sino

que ello respondió a las inspecciones realizadas, cuya documentación incluyó en su moción de sentencia sumaria, las cuales revelaban que se encontraban en grave estado. Llamó la atención sobre el hecho de que, a pesar de haber emitido sucesivas resoluciones municipales autorizando al Alcalde para adquirir tales calles, este nunca las aceptó, habiendo una ausencia de escrito público a tales efectos. En cualquier caso, aseveró que no se le podía obligar a aceptar tales calles, máxime cuando le requirió a la parte apelante que, para acceder a ello, necesitaban ser reparadas, pero esta se negó a realizar las obras requeridas. Insiste en que no es irrazonable requerir tales reparaciones en las calles para su aceptación, pues de lo contrario el Municipio tendría que asumir los costos relativos a esos trabajos.

A ello opone la parte apelante, por una parte, que en las referidas resoluciones municipales constaba la firma del propio Alcalde, de modo que se debía entender que el Municipio había aceptado las referidas calles. Por otra parte, Jenm pone el acento en su argumentación en afirmar que los actos del Municipio con relación a las calles pertinentes revelaban una *aceptación tácita* de estas, es decir, una aceptación *de facto*. Con especificidad, le atribuye al conjunto de las actuaciones del Municipio respecto a dichas calles, (las resoluciones municipales firmadas para su aceptación, el otorgamiento de permiso de control de acceso, la provisión de endosos para las instalaciones pluviales), la referida *aceptación tácita,* lo que conllevaba necesariamente su obligación para culminar los trámites correspondientes. No nos persuade.

Lo primero que habría que reiterar es que no hay controversia alguna sobre el hecho de la carencia de escritura pública en la que el Municipio sea una parte suscribiente asumiendo la transferencia de las referidas calles. Sobre esto, aunque es cierto y fácilmente constatable que la Asamblea Municipal emitió sendas resoluciones municipales autorizando al Alcalde a adquirir las referidas calles, documentos que

llevaban la propia firma del Alcalde, tal negocio jurídico no se concretó, sino que solo quedó en mera autorización para ello.

Es evidente que, ante esto, es que la parte apelante acudió a la teoría sobre la presunta *aceptación tácita* municipal mencionada. Sin embargo, no logra citar propiamente alguna legislación o jurisprudencia que dirija a este Tribunal a admitir tal teoría. Al contrario, examinada la jurisprudencia citada, relacionada a los requisitos que gobiernan la adquisición de derechos y los negocios jurídicos en general en que las municipalidades sean parte, es evidente que precisan contratación escrita en prevención de proteger el interés público. Es decir, en la contratación gubernamental, y en la municipal en particular, la constante es el requerimiento del requisito de forma a través de la contratación mediante escrito.

Por otro lado, sopesada la prueba documental presentada por el Municipio acerca de la condición en que se encuentran las referidas calles, no podemos atribuirle a esta parte que la no aceptación de las calles comportara un acto arbitrario. Es decir, examinada la prueba pericial sobre las reparaciones a las calles que tendría que llevar a cabo el Municipio para que sirvieran su propósito, es razonable concluir que supondrían una carga económica significativa. De lo que se sigue que no apreciemos que el requerimiento del Municipio a Jemn para su reparación como condición previa a su aceptación, sea caprichoso, abusivo o injustificado, sino al contrario. Al así determinar hemos sopesado el hecho de que, inicialmente, a través de las sucesivas resoluciones municipales que autorizaron al Alcalde a aceptar las calles, estas contaron con el visto bueno del personal municipal a cargo de su inspección. Sin embargo, insistimos, no habiéndose concretado el acto para el cual el Alcalde fue autorizado, no resultaba irrazonable que el Municipio, velando por el interés público que le corresponde, reexaminara el estado actual de dichas calles y exigiera su reparación como condición previa a la aceptación.

En definitiva, no observamos error en la manera en que el TPI dispuso de la controversia que tenía que dilucidar, y por ello confirmamos.

**IV. Parte dispositiva**

Por los fundamentos expuestos, confirmamos la *Sentencia Sumaria Parcial* apelada.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones