Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| MIGUEL BORRERO VARGAS<br><br>Apelante<br><br>v.<br><br>AUTORIDAD DE ENERGÍA ELÉCTRICA Y OTROS<br><br>Apelada | KLCE202400078 | CERTIORARI acogido como apelación procedente del Tribunal de Primera Instancia, Sala Superior de Arecibo<br><br>Caso Núm.: SJ2023CV08946 (403 CIVIL)<br><br>Sobre: INJUNCTION (ENTREDICHO PROVISIONAL, INJUNCTION PRELIMINAR Y PERMANENTE) Y OTROS |

Panel integrado por su presidenta, la Jueza Domínguez Irizarry, la Jueza Grana Martínez y el Juez Pérez Ocasio.

Grana Martínez, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 29 de febrero de 2024.

El apelante, Miguel A. Borrero Vargas, en adelante, señor Borrero Vargas o apelante, solicita que revoquemos la sentencia en la que el Tribunal de Primera Instancia desestimó la demanda. Por su parte, LUMA Energy Service, LLC, en adelante LUMA o la apelada, presentó su oposición.

El recurso ante nosotros se presentó erróneamente como un *certiorari*. No obstante, será atendido como una apelación, porque el señor Borrero Vargas solicita la revocación de una sentencia.

Los hechos esenciales para comprender la determinación que hoy tomamos se incluyen a continuación.

## I.

El apelante presentó una demanda en la que pidió al TPI que dictara un interdicto preliminar y permanente y una sentencia

declaratoria contra la Autoridad de Energía Eléctrica, en adelante AEE, y LUMA Energy. El señor Borrero Vargas cuestionó la existencia y legalidad de una servidumbre de paso a favor de la AEE y la legitimación activa de LUMA para representar a la corporación. El apelante alegó que:

(1) El adquirió el inmueble descrito en la demanda, libre de cargas y gravámenes.

(2) Una Certificación Registral evidencia que su propiedad no tiene cargas ni gravámenes en favor de la AEE.

(3) El pidió autorización a la OGPe para legalizar una construcción realizada sin permiso en la propiedad.

(4) LUMA se negó a endosar la legalización de la construcción, porque invade una servidumbre existente a favor de la AEE.

(5) LUMA condicionó su endoso a que relocalice las líneas primarias y secundarias de electricidad, a su costo.

(6) LUMA no tiene legitimación activa porque su contrato con la AEE comenzó el 22 de junio de 2020.

El señor Borrero Vargas solicitó al TPI que dictara una sentencia declaratoria reconociendo que su propiedad no estaba grabada por la servidumbre a favor de la AEE. Además de que dictara un interdicto preliminar y permanente para evitar el daño irreparable ocasionado por la paralización de la legalización de la obra.

En respuesta, LUMA presentó *Solicitud de desestimación de demanda y/o oposición a solicitud de interdicto preliminar y permanente.* En esta, LUMA alegó que tiene legitimación activa, porque la AEE le delegó y transfirió sus poderes, mediante un contrato de alianza público-privada. Además, la apelada pidió la desestimación de la demanda, debido a la falta de jurisdicción sobre la materia y a que sus alegaciones no exponían una reclamación que justifique la concesión de un remedio. LUMA argumentó que el apelante pretendía que el tribunal legalizara una construcción, a

pesar de que el foro con jurisdicción exclusiva primaria sobre esa materia era la OGPe. Por igual, la apelada alegó que el apelante tampoco tiene una causa de acción que justifique la concesión de un remedio, porque realizó una construcción ilegal que afecta el derecho de servidumbre válidamente constituido a favor de la AEE. Según LUMA, el propio apelante reconoció en el proceso administrativo que hizo una construcción ilegal y la existencia de la servidumbre. Por último, alegó que al apelante se le proveyó una alternativa para corregir la situación.

Luego de evaluada tanto la solicitud de desestimación presentada, así como la oposición de la parte apelada, el TPI emitió la sentencia apelada, mediante la que reconoció la legitimación activa de LUMA, conforme a la Ley de Alianzas Público Privada, Ley Núm. 29 de 2009 y la Ley para Transformar el Sistema Eléctrico de Puerto Rico, Ley Núm. 120 de 2018. Ahora bien, desestimó la demanda por falta de jurisdicción sobre la materia, porque no existía controversia de que la propiedad del apelante estaba gravada por una servidumbre de paso a favor de la AEE. Así, el TPI determinó que el apelante no tenía a su disposición un injunction, porque ese remedio no está disponible para proteger un derecho dudoso o controvertido. Según el TPI, la finca del apelante se segregó de la núm. 8718 que, a su vez, se segregó de la núm. 769 que está **gravada en el Registro de la Propiedad con una servidumbre de paso a favor de la Autoridad de Energía Eléctrica**. El TPI concluyó que esa servidumbre grava la propiedad del apelante, porque fue debidamente constituida y registrada en la finca de la cual fue segregada. Sin embargo, aunque el tribunal reconoció que la servidumbre no consta en la escritura pública en la que el apelante adquirió su propiedad ni en su inscripción registral, advirtió que el gravamen surge de un estudio registral profundo de su procedencia. El foro primario atribuyó la omisión de inscribir el gravamen a un

error del Registro de la Propiedad que fue subsanado conforme lo dispone la ley. Además, señaló que el signo aparente de servidumbre es evidente y constituye un aviso a terceros.

El foro apelado concluyó que el apelante construyó sin los permisos requeridos y que la edificación invade la servidumbre de paso a favor de la AEE. Según el TPI, estos hechos fueron admitidos por el ingeniero del apelante. El tribunal hizo constar que el ingeniero Anthony Noriega presentó un *Memorial Explicativo* en la Oficina de Gerencia de Permisos con el objetivo de legalizar la construcción realizada por el apelante sin los permisos requeridos. En el referido documento, Noriega reconoció: (1) la existencia de líneas eléctricas justo en la misma colindancia con la servidumbre de paso, (2) que los dueños y el contratista no respetaron la servidumbre de paso por desconocimiento, (3) el dueño aceptaba el error y que estaba dispuesto a permitir el acceso desde el techo de su propiedad para evitar demoler la obra.

Consecuentemente, el TPI quedó convencido de que el apelante no tiene una causa de acción que justifique la concesión de un remedio, aun dando como ciertas las alegaciones de la demanda. El foro primario llegó a esa conclusión, debido a que la construcción ilegal del apelante afectó la servidumbre de paso, debidamente constituida y protegida por ley, a favor de la AEE. Dicho foro determinó que la solicitud de sentencia declaratoria carece de méritos, conforme a las claras constancias del Registro de la Propiedad. El foro primario resolvió que la Oficina de Gerencia de Permisos es el foro con jurisdicción sobre la materia para atender el asunto del permiso y que el apelante tiene que agotar el procedimiento administrativo, antes de solicitar revisión.

El apelante presentó una moción de reconsideración que fue declarada NO HA LUGAR. Aún inconforme, el señor Borrero Vargas presentó este recurso en el que alega los errores siguientes:

Erró el Honorable Tribunal de Primera Instancia al desestimar la demanda recurrida por falta de jurisdicción.

Erró el Honorable Tribunal de Primera Instancia al desestimar en su totalidad el recurso de injunction y sentencia declaratoria, al haber sido presentada la solicitud exclusivamente por LUMA, *supra*, una de las Partes Demandadas.

Erró el Honorable Tribunal de Primera Instancia al desestimar la demanda en su totalidad, sin atender en sus méritos el recurso de sentencia declaratoria.

Erró el Honorable Tribunal de Primera Instancia al desestimar la demanda de injunction y sentencia declaratoria, sin dar como ciertos todos los hechos bien alegados en la demanda y existiendo múltiples controversias en cuanto a:

    a) la notificación adecuada de las causas de denegatoria del endoso solicitado;

    b) las líneas de distribución, su carga;

    c) la autenticidad de los documentos, los cuales no fueron estipulados ni sometidos conforme a las Reglas de Procedimiento Civil, las Reglas de Evidencia y/o la Reglamentación Aplicable.

Erró el Honorable Tribunal al concluir la existencia de una servidumbre válidamente constituida contrario al derecho aplicable y a la evidencia de récord.

Erró el Honorable Tribunal de Primera Instancia al no atender en sus méritos la controversia entorno(sic) a la falta de legitimación activa y de la naturaleza de la relación contractual entre LUMA y AEE; sus facultades y/o deberes ministeriales; y a quien corresponde la titularidad y/o la administración de las líneas de distribución objeto de controversia y el poste en relación al caso de epígrafe.

Erró el Honorable Tribunal al no pasar juicio valorativo sobre la aplicación de la Reglamentación vigente correspondiente de AEE a LUMA, sin que haya sido aprobada reglamentación conforme a la L.P.A.U., y al procedimiento de publicidad requerido ante el Departamento de Estado, contrario a lo dispuesto por la Ley de Política Pública Energética de PR, Ley 17-2019, sobre Reglamentación de Nuevas Políticas Energéticas.

**II.**

**Jurisdicción sobre la materia**

La jurisdicción es el poder o autoridad del tribunal para considerar y decidir los casos y controversias ante su consideración. Por su parte, la jurisdicción sobre la materia es la capacidad del

tribunal para atender y resolver una controversia sobre un aspecto legal. El Estado es el que único puede otorgar, limitar o privar esa capacidad mediante legislación. La ausencia de jurisdicción sobre la materia: (1) no puede subsanarse, (2) las partes no pueden voluntariamente arrogársela, (3) conlleva la nulidad de los dictámenes emitidos, (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción, (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde proceda el recurso y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal *motu proprio*. Un tribunal que determina que no tierne jurisdicción sobre la materia, solo puede declararlo y desestimar el caso. *Beltrán Cintrón et al v. ELA et al,* 204 DPR 89, 101-102 (2020); *S.L.G. Solá-Moreno v. Bengoa Becerra,* 182 DPR 675, 682-683 (2011).

La doctrina de jurisdicción primaria es una norma de limitación judicial, pues el Estado puede privar a un tribunal de jurisdicción sobre la materia mediante legislación. Nos sirve para determinar si es el foro administrativo o el judicial el que tiene la jurisdicción para atender y adjudicar el asunto. Por esa razón, la jurisdicción primaria no está relacionada al momento de la revisión judicial, sino más bien a quién tiene la facultad inicial para atender el asunto, el tribunal o el organismo administrativo. *Beltrán Cintrón et al v. ELA et al,* supra; *Rivera v. De León,* 191 DPR 700, 709-710 (2014); D. Fernández Quiñonez, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme,* 3era ed., Bogotá. Ed. Forum, 2013, pág. 562.

Por otro lado, la jurisdicción primaria tiene dos vertientes, la jurisdicción primaria concurrente y la jurisdicción primaria exclusiva. La jurisdicción primaria concurrente tiene lugar cuando la ley permite que la reclamación se inicie en la agencia o en el tribunal. No obstante, la primacía cede a la agencia por su

conocimiento y especialización sobre el asunto objeto de la reclamación. La otra vertiente, la jurisdicción primaria exclusiva o estatutaria del foro administrativo, es un mandato legislativo conferido expresamente en la ley. La designación de la jurisdicción exclusiva debe ser clara y precisa. Sin embargo, el legislador no siempre usa el término exclusiva. Al determinar si un estatuto confiere jurisdicción exclusiva al foro administrativo, es necesario evaluar si ha sido dispuesto expresamente en la ley o si surge de esta por implicación necesaria. La jurisdicción exclusiva no soslaya la revisión judicial, meramente la pospone hasta tanto el organismo administrativo emita su determinación final. No obstante, debemos señalar que la jurisdicción primaria del foro administrativo puede ceder ante un planteamiento de índole constitucional. *Beltrán Cintrón et al v. ELA et al,* supra; *Rivera v. De León,* supra.

### Legitimación Activa

La legitimación activa es el mecanismo utilizado por los tribunales para: (1) delimitar su propia jurisdicción, (2) no adentrarse en los dominios de otras ramas de gobierno y (3) no lanzarse a resolver cuestiones hipotéticas o planteadas dentro de un contexto inadecuado. La parte que solicita un remedio judicial tiene que demostrar que, (1) ha sufrido un daño claro y palpable, (2) el daño es real, inmediato y preciso, no abstracto o hipotético, (3) existe una conexión entre el daño sufrido y la causa de acción ejercitada y (4) la causa de acción surge de la Constitución o de una ley. *Hernández Santa v. Srio. de Hacienda,* 208 DPR 727, 738-739 (2022); *Fund. Surfrider y otros v. A.R.Pe.,* 178 DPR 563, 572 (2010).

### La Moción de Desestimación

La Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, permite que el demandado solicite la desestimación de la demanda, antes de presentar una contestación. Las razones para solicitar la desestimación son las siguientes: (1) falta de jurisdicción sobre la

materia, (2) falta de jurisdicción sobre la persona, (3) insuficiencia del emplazamiento, (4) insuficiencia del diligenciamiento del emplazamiento, **(5) dejar de exponer una reclamación que justifique la concesión de un remedio** y (6) dejar de acumular una parte indispensable. *Costas Elena v. Magic Sport,* 2024 TSPR 13; *González Méndez v. Acción Soc.*, 196 DPR 213, 234 (2016).

El Tribunal Supremo de Puerto Rico ratificó tan reciente como en *Costas Elena v. Magic Sport,* supra, las normas que rigen la desestimación de una demanda basada en el inciso 5 de la Regla 10.2, *supra.* Estas normas son las siguientes:

(1) La desestimación procede cuando de las alegaciones de la demanda, surge que alguna de las defensas afirmativas derrotara la pretensión del demandante.

(2) Al evaluar una moción de desestimación al amparo de la Regla 10.2 (5), *supra,* el tribunal tiene que tomar como ciertos todos los hechos bien alegados en la demanda, aseverados de manera clara y concluyente y que de su faz no dan margen a dudas.

(3) Los tribunales que atienden una moción basada en la Regla 10.5, *supra,* tienen que evaluar las alegaciones de la demanda conjuntamente, y de la forma más favorable para el demandante.

(4) Toda duda debe resolverse a favor del demandante.

(5) El demandado tiene que establecer con toda certeza que el demandante no tiene derecho a remedio alguno, bajo cualquiera estado de Derecho que se pudiera probar en apoyo a su reclamación. Véase, además, *Eagle Security v. Efron Dorado et al*, 211 DPR 70, 84 (2023).

La privación de un litigante de su día en corte solo procede en casos extremos. La desestimación al amparo de la Regla 10.2(5), *supra,* prosperará si luego de realizar el análisis requerido, el tribunal entiende que no se cumple con el estándar de plausibilidad. Los tribunales no pueden dar paso a una demanda insuficiente bajo el pretexto de que las alegaciones colusorias podrán ser probadas con el descubrimiento de prueba. *Costas Elena v. Magic Sport, supra.*

**Servidumbre**

El Código Civil de 1930 define las servidumbres como el gravamen impuesto sobre un inmueble en beneficio de otro perteneciente a distinto dueño.[1] El predio a favor del que está constituida es el dominante y el que la sufre el sirviente. Art. 465 del Código Civil, 31 LPRA sec. 1631. Según el Art. 468, 31 LPRA sec. 1634, las servidumbres pueden ser continuas, por lo que su uso es o puede ser incesante, sin la intervención de ningún hecho del hombre. Además, pueden ser aparentes, porque se anuncian y están continuamente a la vista por signos exteriores que revelan su uso y aprovechamiento. Las servidumbres son inseparables de las fincas a las que pertenecen activa o pasivamente. Art. 470 del Código Civil, 31 LPRA sec. 1636. Por su naturaleza, las servidumbres son indivisibles. Las servidumbres no se modifican por la división del predio sirviente en dos o más y cada una de las fincas permanece gravada en la parte que le corresponde. Art. 471 del Código Civil, 31 LPRA sec. 1637.

Los Arts. 485 al 487 del Código Civil, 31 LPRA secs. 1701 al 1703, regulan las servidumbres legales. El objetivo de las servidumbres legales es la **utilidad pública** o el interés de los particulares. Las servidumbres legales de utilidad pública o comunal se rigen por las leyes y reglamentos especiales que las determinan y en su defecto por las disposiciones del Código Civil sobre las servidumbres en general. Art. 486 del Código Civil, 31 LPRA sec. 1702.

El legislador estableció las servidumbres legales en la Ley Núm. 143 de 20 de julio de 1979, 27 LPRA sec. 2151 y siguientes. **El dueño del predio sirviente de una servidumbre legal no tiene**

---

[1] Hacemos referencia al Código Civil de 1930, que era el vigente al momento de constituirse la servidumbre en controversia. Los actos y contratos celebrados bajo el régimen de la legislación anterior y que son válidos con arreglo a ella, surten todos sus efectos según la misma, con las limitaciones establecidas en este Código. … 31 LPRA sec. 11717.

**opción en cuanto a su constitución. Su consentimiento no es un requisito indispensable para la constitución de una servidumbre legal a la que les aplican los principios generales sobre las servidumbres continuas y aparentes contenidas en el Código Civil.** *Ciudad Real v. Mun. Vega Baja,* 161 DPR 160, 173-174 (2004).

La inscripción de las servidumbres legales no es constitutiva. La Ley Núm. 143, *supra,* establece un procedimiento de inscripción de las servidumbres legales distinto al de los demás derechos reales. Su inscripción no está atada a la presentación de una escritura pública en el Registro de la Propiedad, cuando es parte de un proyecto de construcción de edificios o urbanizaciones en los que por la finca principal o solares afectados discurren o se requieren instalar servicios públicos. La sección 4 de la Ley Núm. 143, *supra,* 27 LPRA sec. 2154, establece que en tales casos basta la presentación en el Registro de la Propiedad de una certificación en la que se acredite la constitución de cada una de las servidumbres para ser inscritas como gravámenes. La certificación será expedida por el funcionario o empleado autorizado de las instrumentalidades gubernamentales o de los municipios y deberá estar acompañada de un plano. Dicho plano deberá demostrar gráficamente su trayectoria y extensión y dónde constan las fincas afectadas. El plano tiene que estar endosado o aprobado por la agencia gubernamental o municipio adquiriente del derecho de servidumbre. Además, deberá estar acompañada por un documento autenticado ante notario mediante el cual el propietario del predio sirviente cede el derecho de servidumbre a favor de la entidad pública o municipio en cuestión. Igualmente deberá constar el consentimiento del adquiriente del derecho a dicho traspaso. *Ciudad Real v. Mun. Vega Baja, supra,* págs.174-175; 27 LPRA sec. 2154.

Además, la sección 1 de Ley Núm. 143, *supra,* 27 LPRA sec. 2151, establece que las servidumbres de paso de energía eléctrica, de líneas telefónicas de servicios de telecomunicaciones y televisión por cable, instalaciones de acueductos y alcantarillados pluviales y sanitarios son servidumbres legales, incluyendo sus equipos, estructuras y accesorios sean aéreas, sobre la superficie o soterradas. Las servidumbres legales pueden adquirirse por cualquier medio legal de adquirir la propiedad, mediante documento privado o escritura pública o por prescripción adquisitiva de 20 años o expropiación forzosa. Las entidades públicas que rinden estos servicios deberán aprobar y promulgar los reglamentos que regirán el uso y disfrute de dichas servidumbres, conforme a las necesidades particulares de cada servicio. Sec. 3 de la Ley Núm. 143, *supra,* 27 LPRA sec. 2153.

### Interdicto o Injunction

El recurso de interdicto o injunction es un remedio extraordinario que procura la expedición de un mandamiento judicial que compela a una persona a abstenerse de hacer o de permitir una conducta que inflige o perjudica los derechos de otra. Art. 675 del Código de Enjuiciamiento Civil de PR, 32 LPRA sec. 3521, *Next Step Medical v. Bromedicon et al,* 190 DPR 474, 485-486 (2014). Este recurso se caracteriza por su perentoriedad y por su acción dirigida a evitar un daño inminente o a restablecer el régimen de ley conculcado por la conducta opresiva, ilegal o violenta del transgresor del orden público. *Plaza Las Américas v. N & H,* 166 DPR 631, 643 (2005). **El injunction procede cuando no existe otro remedio procesal igual de efectivo y ágil**. *Peña v. Federación de Esgrima de PR,* 108 DPR 147, 154 (1978). Un daño irreparable es aquel para el cual no existe un remedio adecuado en ley que pueda subsanar su ocurrencia. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.,* 174 DPR 409, 427 (2008).

El injunction preliminar es el remedio provisional emitido en cualquier momento de un pleito, después de una vista en que las partes han presentado prueba en su apoyo y oposición. Su propósito principal es mantener sin alteración la situación planteada, hasta la celebración del juicio en sus méritos. La orden de injunction preliminar evita que la conducta del demandado convierta en académica la sentencia o le ocasionen daños mayores al peticionario, mientras perdura el litigio. *Mun. Ponce v. Gobernador,* 136 DPR 776, 784 (1994).

La Regla 57.3 de Procedimiento Civil, 32 LPRA Ap. V, establece los criterios que el tribunal debe considerar al evaluar la procedencia de un injunction preliminar. Los criterios son los siguientes: (1) la naturaleza de los daños que las partes puedan sufrir de concederse o denegarse el injunction, (2) su irreparabilidad o la existencia de un remedio adecuado en ley, (3) la probabilidad de que la parte promovente prevalezca eventualmente al resolverse el litigio en su fondo, (4) la probabilidad de que la causa se torne académica de no concederse el injunction, (5) el posible impacto sobre el interés público del remedio que se solicita y (6) diligencia y la buena fe con que ha actuado la parte peticionaria. *Asociación Vec. V Caparra v. Asoc. Fom Educ.,* 173 DPR 304, 319-320 (2008), Regla 57.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 57.3.

Al evaluar un injunction permanente, el tribunal debe considerar: (1) si el demandante ha prevalecido en un juicio en sus méritos, (2) si el demandante posee algún remedio adecuado en ley, (3) el interés público implicado y (4) el balance de equidades. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.,* supra, pág. 428. Los requisitos promulgados por la jurisprudencia como los enumerados por las Reglas de Procedimiento Civil no son categóricos ni absolutos son unas guías o marcos directivos, circunscritos a la discreción judicial. *Next Step Medical v. Bromedicon et al,* supra, pág. 487.

**La Ley de Alianzas Público-Privadas**

La Ley Núm. 29 de 2009, 27 LPRA sec. 2601, establece la política pública de favorecer y promover el establecimiento de alianzas público-privadas. Art. 2, 27 LPRA sec. 2602. El legislador autorizó a toda entidad gubernamental a otorgar contratos de alianza con relación a cualquier función, servicio o instalación de la cual es responsable bajo las disposiciones de su ley orgánica o leyes especiales aplicables y conforme a la política pública. Art. 4, 27 LPRA sec. 2603. La Autoridad para las Alianzas Público-Privadas[2] puede negociar y otorgar con cualquier persona todo tipo de contrato incluyendo y sin limitarse, contratos de concesión administrativa, alianza de asistencia y todos aquellos instrumentos y acuerdos necesarios o convenientes para ejercer los poderes y funciones conferidos a la Autoridad. Art. 6, 27 LPRA sec. 2605(8).

La AEE tiene autoridad expresa de llevar a cabo cualquier transacción suya y a otorgar contratos de alianza o de venta. La Corporación Pública podrá vender o de otra forma disponer de cualquiera de sus activos relacionado a la generación de energía y transferir o delegar cualquier operación, función o servicio a uno o a varios proponentes. El Gobierno de Puerto Rico tendrá la misma facultad en la medida que sea necesario. Sec. 5 de la Ley Núm. 120, 22 LPRA sec. 1115 (a).

**Sentencia declaratoria**

La Regla 59.1 de Procedimiento Civil. 32 LPRA Ap. V, autoriza al Tribunal de Primera Instancia a declarar derechos, estados y otras relaciones jurídicas, aunque se haya instado o pueda instarse otro remedio. El tribunal podrá emitir una declaración afirmativa o negativa. Su determinación tendrá la eficacia y el vigor de las sentencias o resoluciones definitivas. Según la Regla 59.2, 32 LPRA

---

[2] La Autoridad para las Alianzas Público-Privadas es una corporación pública del Gobierno de Puerto Rico adscrita a la AAFAF. 27 LPRA sec. 2604 (a).

Ap. V. La sentencia declaratoria está disponible para toda persona interesada en una escritura, testamento, un contrato escrito u otros documentos constitutivos de contrato. Igualmente, está disponible para aquellos cuyos derechos, estado u otras relaciones jurídicas fuesen afectados por un estatuto, ordenanza municipal, un contrato o una franquicia. El interesado podrá solicitar una decisión sobre cualquier divergencia en la interpretación o validez de estos y una declaración de los derechos, estados u otras relaciones jurídicas derivadas de los mismos.

La sentencia declaratoria es un mecanismo remedial y profiláctico que permite anticipar la dilucidación en sus méritos de cualquier reclamación ante los tribunales, siempre y cuando exista un peligro potencial contra la parte que la solicitó. El propósito de este recurso extraordinario es disipar la incertidumbre jurídica y contribuir a la paz social. La sentencia declaratoria puede ser dictada cuando los hechos alegados demuestran que existe una controversia sustancial entre partes con intereses legales adversos, sin que medie lesión previa de los mismos. Como regla general, la sentencia declaratoria no está disponible para revisar decisiones administrativas. La sentencia declaratoria no puede utilizarse cuando el legislador ha desarrollado un procedimiento administrativo específico para atender el asunto en controversia. *Beltrán Cintrón et al v. ELA et al,* supra, pág. 109.

**III.**

Este tribunal atenderá los señalamientos de errores primero al quinto conjuntamente, porque están íntimamente relacionados. El apelante, en esencia, cuestiona la validez de la servidumbre a favor de la AEE. El señor Borrero Vargas alega que el TPI erró al desestimar la demanda por los fundamentos de falta de jurisdicción sobre la materia y porque no expone una reclamación que justifique la concesión de un remedio.

El apelante tiene razón, en parte, al cuestionar la desestimación de la demanda por la falta de jurisdicción sobre la materia. A nuestro juicio, no existe un conflicto jurisdiccional entre el foro administrativo y el judicial. El TPI tiene jurisdicción sobre la materia, porque es el foro con autoridad para pasar juicio sobre la existencia y legalidad de la servidumbre a favor de la AEE. *Asoc. V. Villa Caparra v. Iglesia Católica,* 117 DPR 346, 354 (1986). La jurisdicción de la OGPe se circunscribe al proceso de legalizar la construcción y autorizar el permiso.

No obstante, la desestimación de la demanda procede porque el apelante no tiene una causa de acción que justifique la concesión de un remedio. Su reclamación no prosperará aun dando como ciertas todas las alegaciones de la demanda e interpretándolas a su favor. **La reclamación no procede, porque está basado en una construcción ilegal que violenta el derecho de una servidumbre legal de paso a favor de la AEE válidamente constituido**. La sentencia declaratoria no puede ser dictada, porque las alegaciones de la demanda son insuficientes para establecer una controversia sustancial entre partes adversas. Igualmente, las alegaciones son insuficientes para que proceda un injunction, debido a que no surge de estas la existencia de un daño inminente y la falta de un remedio adecuado en ley.

Según los documentos de autos, el 29 de junio de 1989 se autenticó ante el notario público Everilda Rodríguez de Mejías, el documento en el que Bienvenido C. Vélez Sepúlveda y Carmen Luisa Santiago comparecieron como dueños del predio sirviente y cedieron el derecho de servidumbre a favor de la AEE. El señor Rafael Betancourt compareció como representante de la AEE para prestar su consentimiento al traspaso. Los propietarios del inmueble constituyeron la servidumbre a perpetuidad sobre la finca, **debido a los fines públicos** del sistema eléctrico. Véase, págs. 19-22 del

apéndice. Según las constancias del Registro de la Propiedad, la finca núm. 11484, propiedad del apelante, fue segregada de la finca núm. 8718 (pág. 39 del apéndice) que, a su vez, proviene de la finca núm. 769 (pág. 35 del apéndice), que es la que está grabada por la servidumbre a favor de la AEE. La servidumbre consta inscrita en el folio 181 del tomo 109 de Quebradillas y fue debidamente constituida mediante el Procedimiento de Certificación establecido en ley. Véase, pág. 27 del apéndice. Además, está demarcada e ilustrada en el plano levantado conforme a la ley. Véase, pág. 24 del apéndice.

La representación legal del apelante pasa por alto que las servidumbres legales de paso a favor de la AEE son: (1) aparentes, (2) continuas e (3) inseparables, porque no se modifican por la división del predio sirviente, (4) las fincas divididas permanecen gravadas, (5) su fin es la utilidad pública y (6) **el dueño del predio sirviente no tiene opción en cuanto a su constitución**. La propiedad del apelante está gravada por la servidumbre de paso a favor de la AEE, porque se segregó de la finca núm. 769. La omisión de anotarla en su finca de la cual fue segregada, no lo libera del gravamen, debido al carácter indivisible, continuo y aparente de la servidumbre. Precisa destacar que de los autos surge que, el 13 de septiembre de 2023, la Registradora de la Propiedad hizo una Nota Aclaratoria Advertencia a Terceros. La nota hacer constar que la finca núm. 8718, de la cual se segregó la propiedad del apelante, se inscribió libre de cargas y gravámenes. La Registradora de la Propiedad corrigió el error y aclaró que por su procedencia está gravada por una servidumbre a favor de la AEE.

Por otra parte, surge de la prueba que, el propio ingeniero del apelante presentó un *Memorial Explicativo* en la OGPe, en el que reconoció la existencia de unas líneas eléctricas en la colindancia y con la servidumbre de paso. Por igual, admitió que el constructor y

el dueño no respetaron la servidumbre. Además, informó que el dueño estaba dispuesto a permitir acceso a la AEE desde el techo de su propiedad, para evitar demoler la obra. Véase, pág. 17 del apéndice. Por otra parte, LUMA proveyó al apelante la oportunidad de legalizar la construcción condicionada al pago del costo de la relocalización de las líneas. Véase, pág. 18 del apéndice.

Los señalamientos de errores sexto y séptimo cuestionan la legitimación activa de LUMA para comparecer en representación de la AEE.

La legitimación activa de LUMA es incuestionable. El legislador autorizó expresamente a la Autoridad de Alianza Público Privadas y a la AEE a otorgar contratos de alianza público privado. La Ley para Transformar el Sistema Eléctrico de Puerto Rico autoriza expresamente a la AEE a otorgar contratos de alianza o de venta, disponer de cualquier activo relacionado a la generación de energía y a transferir o delegar cualquier operación, función o servicio a uno o a varios proponentes. El 30 de junio de 2021, la AEE ejerció la autoridad conferida y otorgó un contrato de alianza publico privada. A través de dicho contrato, la corporación pública transfirió a LUMA el poder de operar, manejar, reparar y enforzar todos los derechos relacionados al sistema de transmisión y distribución del sistema eléctrico. El poder concedido incluyó representar y actuar como agente de la AEE en todos sus reglamentos y su ley orgánica. Así como, la constitución, operación y cancelación de servidumbres legales de servicio público en favor de la Autoridad. Véase, págs. 47 a 50 del apéndice.

**IV.**

Por lo antes expuesto, se confirma la sentencia apelada en la que el TPI desestimó la demanda.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones