ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| BENJAMÍN DUCHESNE LANDRÓN<br><br>Apelante<br><br>v.<br><br>AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS Y OTROS<br><br>Apelados | KLAN202301021 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Civil núm.: KAC2017-0416<br><br>Sobre: Solicitud de Orden |
|---|---|---|

Panel integrado por su presidenta, la Jueza Rivera Marchand, el Juez Rodríguez Flores y el Juez Campos Pérez[1]

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de abril de 2024.

La parte demandante y apelante, Sr. Benjamín Duchesne Landrón (señor Duchesne Landrón), nos solicita que revoquemos la *Sentencia Enmendada* emitida el 9 de agosto de 2023, notificada el día 15 siguiente, por el Tribunal de Primera Instancia, Sala de San Juan (TPI). En el dictamen, el TPI reconsideró su previa postura y declaró con lugar la *Moción de Sentencia Sumaria* instada por la parte demandada y apelada, Autoridad de Acueductos y Alcantarillados (AAA), a la que se unió Aqua Recovery Group, Inc. (ARG). En consecuencia, desestimó con perjuicio la reclamación civil del compareciente.

Anticipamos que, por los fundamentos que expondremos, confirmamos la determinación judicial apelada.

**I.**

El 11 de mayo de 2017, el señor Duchesne Landrón presentó una *Demanda* en contra de la AAA y ARG; posteriormente, incoó una

---

[1] El Hon. José I. Campos Pérez sustituyó a la Jueza Sol de Borinquen Cintrón Cintrón, por virtud de la Orden Administrativa OATA-2024-021, emitida el 2 de febrero de 2024.

*Demanda Enmendada.*[2] En síntesis, adujo que la AAA no poseía un título válido en derecho sobre un registro de inspección o *manhole* ubicado en el solar de su propiedad, el cual alegó había estado en desuso durante unos treinta años. Explicó que, desde marzo de 2016, el *manhole* desbordaba aguas sanitarias, por lo que hizo una querella. Al mes siguiente, la AAA intervino. A través de Specialty Group, Inc. (SG)[3] se colocó temporalmente una tubería, acoplada a una bomba, para el manejo de aguas negras. El demandante aseguró que los trabajos afectaron su terreno, tales como erosión, deslizamientos y daños a una verja de metal y a un muro de contención. Reclamó la remoción del *manhole,* una compensación justa y equitativa, que estimó en $1,000 mensuales por los trabajos realizados en su predio o una suma de $50,000 para restaurar su propiedad.

ARG presentó su alegación responsiva.[4] Si bien reconoció que fue contratada por la AAA para solucionar de forma permanente una emergencia de desborde de aguas negras del *manhole* hacia la Quebrada Ausubo —la cual discurre por la colindancia del lote residencial del demandante— negó reiteradamente las imputaciones de responsabilidad por los daños alegados. Indicó que SG colocó de forma temporal el *by-pass* al lado del *manhole* para bombear las aguas usadas desde el registro hacia la tubería sanitaria. Esta medida buscaba evitar la contaminación de la Quebrada Ausubo y, por ende, incurrir en violaciones ambientales. Luego, en julio de 2016, ARG se encargó de la reparación permanente. El proyecto

---

[2] *Demanda*, Apéndice, págs. 35-41. Refiérase a las respectivas contestaciones de AAA y ARG en el Apéndice, págs. 49-51; 52-60. *Demanda* Enmendada, Apéndice, págs. 64-70.

[3] En su reclamación original, entre otros, el señor Duchesne Landrón demandó también a Specialty Group, Inc., a quien se le anotó la rebeldía. No obstante, no surge de los autos que se haya emplazado nuevamente a dicha parte al incoar la *Demanda Enmendada.* Véase, Apéndice, págs. 46-48. A su vez, entre otros trámites procesales, el TPI desestimó sin perjuicio la reclamación del demandante contra la aseguradora MAPFRE; y ARG desistió de su acción civil contra tercero, en referencia a Universal Insurance Company y Carrasquillo Construction, Inc. Véase, Apéndice, págs. 71-72; 73; 75-76.

[4] Apéndice, págs. 86-94.

consistió en la instalación de 810 pies de tubería sanitaria de 10 pulgadas de diámetro, a conectarse con el sistema de alcantarillado existente en el sector. Aseveró que el diseño se hizo para que toda la tubería transcurriera a través de la servidumbre de la AAA. En cuanto al muro de contención, ARG aseveró que se construyó dentro de la servidumbre de paso de la AAA y pegado al *manhole*, ubicado detrás de la propiedad del demandante.

Así las cosas, la AAA presentó el 23 de mayo de 2022 una *Moción de Sentencia Suma*ria,[5] mediante la cual solicitó la desestimación del pleito. Unió al escrito judicial la escritura pública número 7 de 14 de enero de 1965 sobre constitución de servidumbre; la escritura de compraventa del señor Duchesne Landrón y fragmentos de la contestación al interrogatorio por parte del Ing. Roberto Martínez Toledo (ingeniero Martínez Toledo), quien para 2016 fungía como director ejecutivo de la Región Metro de la AAA.

ARG se unió a la solicitud de resolución abreviada.[6] Anejó a la petición la contestación a un pliego de interrogatorio juramentado por el Sr. Jonathan González Santiago (señor González Santiago), exgerente general de operaciones de ARG, un plano preliminar del sistema sanitario en controversia y documentos de la obra contratada.

El demandante, por su parte, presentó sendas oposiciones a ambas solicitudes sumarias.[7] Incluyó una declaración jurada prestada el 16 de junio de 2022, una carta de 25 de agosto de 2016, suscrita por el ingeniero Martínez Toledo, y una mensura de su predio, realizada por el Agrim. Pedro Rivera Colón (agrimensor Rivera Colón).

---

[5] Apéndice, págs. 95-120.
[6] Apéndice, págs. 122-142.
[7] Apéndice, págs. 143-164; 165-173.

Inicialmente, el TPI denegó resolver mediante la vía sumaria.[8] Además de las cuestiones relacionadas con la responsabilidad imputada a los demandados y la valoración de los daños, el TPI estableció como controversia "[s]i el muro de contención, construido en la propiedad del demandante, [estaba] localizado en la servidumbre de paso de la AAA".[9]

La AAA interpuso una *Moción de Reconsideración.*[10] Abogó por la ausencia de una causa de acción a favor del demandante. Ello así, porque el TPI reconoció la existencia de una servidumbre legal de la AAA, que las líneas sanitarias se construyeron en los terrenos denominados como franja libre, que el *manhole* es parte del sistema sanitario de la zona, que en marzo de 2016 la tubería colapsó, lo que ocasionó una emergencia, por lo que se colocó temporalmente un desvío o *by-pass.* En fin, para la AAA era irrelevante si el muro de la propiedad del demandante estaba o no sobre el registro de inspección de la AAA debido a la existencia de la servidumbre legal. Expuso que, de conformidad con el ordenamiento legal pertinente, el *manhole* es parte de la servidumbre de la AAA, la cual existía desde antes que el demandante adquiriera su residencia. La AAA añadió que la reglamentación establece la prohibición de cualquier obra que resulte incompatible con el derecho de servidumbre de la AAA.

El TPI acogió los planteamientos del demandado, por lo que el 10 de mayo de 2023 varió su decisión y dictó una *Sentencia,*[11] por virtud de la cual desestimó la *Demanda Enmendada* contra la AAA; no así contra ARG. Por ello, éste solicitó que se reconsiderara el dictamen, para que también se desestimara la causa de acción en su contra.[12] Entonces, el TPI dictó la *Sentencia Enmendada* aquí

---

[8] Apéndice, págs. 174-183.
[9] Apéndice, pág. 177.
[10] Apéndice, págs. 184-188.
[11] Apéndice, págs. 189-198.
[12] Apéndice, págs. 199-202.

apelada, en la que encontró probados los siguientes hechos, a los que hemos impartido énfasis:[13]

1. La Autoridad de Acueductos y Alcantarillados es una corporación pública del Estado Libre Asociado de Puerto Rico, con capacidad para demandar y ser demandada. La AAA tiene el poder de legislar y la facultad de aprobar reglamentos y adjudicar las controversias o asuntos que puedan surgir a tenor con los mismos.

2. La Urbanizadora Cupey Inc., **mediante la Escritura Pública Número 7 de 14 de enero de 1965, constituyó una servidumbre de línea de descarga a favor de la AAA en los terrenos denominados como Franja Libre**. La Franja Libre tiene un ancho de Cuatro (4) Metros y una longitud de Setecientos Setenta y Treinta y Tres metros con Setenta y Cuatro Centímetros. (733.34)

3. El 28 de abril de 1976, el demandante adquirió la residencia número B-34 en la Urbanización Sagrado Corazón radicada en el Barrio Cupey del término municipal de San Juan. **La propiedad del demandante tiene una colindancia por el ESTE en una distancia de treinta y tres metros (33.00 mts.) con la Franja Libre**.

4. La escritura de compraventa dispone lo siguiente en cuanto a la servidumbre: "[La propiedad] se encuentra además afectada a servidumbre a favor del Gobierno de la capital, servidumbre a favor de la Autoridad de Fuentes Fluviales de Puerto Rico y a condiciones restrictivas".

5. El 23 de marzo de 2016, AAA recibió una **querella de desborde sanitario** (#51852260). Esta querella dio inicio a una investigación del sistema sanitario que discurre por la Quebrada Ausubo en la Urbanización Sagrado Corazón de San Juan. Como resultado de la investigación se encontró que **la línea sanitaria estaba averiada e inoperante en un tramo de aproximadamente 800 metros lineales**.

6. El 22 de julio de 2016, la AAA sostuvo una reunión con el demandante y se le notificó que **el registro al que se conectó la bomba está ubicado en la servidumbre constituida a favor de la AAA**, mediante la escritura pública 7 de 14 de enero de 1965. Ese día también **se le hizo saber que el muro de cemento que éste había construido estaba ubicado encima de la caja de cemento que protege al registro que se encuentra en la Servidumbre de la AAA**.

7. La Servidumbre legal de la AAA se constituyó hace 57 años, la misma tenía diez (10) años de constituida cuando el demandante adquirió su residencia. **El *manhole* es un signo aparente de la servidumbre de**

---

[13] Apéndice, págs. 1-12.

**la AAA, por lo que el demandante tuvo conocimiento de la servidumbre y su ubicación** desde al menos treinta (30) años previos a la radicación de la presente demanda.

8. El 25 de agosto de 2016, el Ing. Roberto Martínez, Director Ejecutivo de la Región Metro de la AAA, envió una carta al demandante en donde le indica que **el *manhole* (registro) es parte del sistema sanitario de la AAA** en el área y que había un desvío instalado sobre el registro que se encuentra en la servidumbre de paso de la AAA.

9. Aqua Recovery Group fue contratada mediante "Purchase Order" número 652016751 por Autoridad de Acueductos y Alcantarillados de Puerto Rico para solucionar de forma permanente el desborde de este *manhole* localizado entre la Urbanización Sagrado Corazón y la PR-845.

10. AAA convocó una nueva subasta para la instalación de una nueva tubería. Aqua Recovery se llevó el contrato y sustituyó la bomba instalada por Endix Group, también conocida como Specialty Group cuyo mantenimiento estuvo a cargo de Carrasquillo Construction.

11. Los trabajos fueron adjudicados a Aqua Recovery Group el 21 de junio de 2016 por la cantidad de $303,935.95. El 26 de enero se aprueba un Change Order por la cantidad de $154,362.74.

12. Luego de hacerse el estudio de mensura preparación de terrenos, se hizo un diseño, se sometió a AAA y se aprobó. Se comenzó la construcción de instalar la tubería nueva de 8 pulgadas que pasa por la servidumbre que pasa por la troncal sanitaria.

13. El proyecto consistía en instalar 810 pies de tubería sanitaria de 10" de diámetro con los niveles apropiados y conectarse al sistema de alcantarillados existente en la Urb. Sagrado Corazón. **Esta tubería reemplazaría la tubería colapsada que estaba contaminando la Quebrada Ausubo**. El diseño se hizo para que toda la tubería transcurriera a través de la servidumbre de la Autoridad de Acueductos y Alcantarillados.

14. Como el sistema sanitario existente está colapsado, mientras se terminaba el trabajo, se mantuvo una bomba *diesel* sacando aguas negras desde el *manhole* detrás de la propiedad del demandante e inyectándola a través de la tubería pluvial hacia el *manhole* de la calle.

15. El uso de la bomba era obligatorio ya que si se removía la bomba *by-pass* del lugar antes de concluir el proyecto, el *manhole* comenzaría a desbordarse de nuevo y las aguas negras correrían hacia la Quebrada Ausubo incurriendo en violaciones ambientales y exponiéndose a multas y otros procedimientos legales.

16. **Todo el trabajo efectuado ha sido alrededor del *manhole* afectado y dentro de la servidumbre de paso de la Autoridad de Acueductos y Alcantarillados y la servidumbre de la Quebrada Ausubo**. La servidumbre de la Autoridad de Acueductos y Alcantarillados es de tres metros (9.84 pies) desde el centro de la utilidad.

17. El muro de contención construido por el demandante está dentro de la servidumbre de paso.

18. El *manhole* afectado no fue construido por Aqua Recovery Group.

Al tenor de los enunciados fácticos citados, el TPI concluyó que, desde el 14 de enero de 1965, la AAA tiene una servidumbre legal, continua, aparente y válidamente constituida en el área denominada como franja libre en la Urbanización Sagrado Corazón, sita en Río Piedras. Consiguientemente, desestimó con perjuicio las causas de acción del demandante en contra de la AAA y ARG.

En esta ocasión, el señor Duchesne Landrón sí presentó una *Moción de Reconsideración*.[14] En síntesis, sostuvo que existían controversias en torno a si el *manhole* y las tuberías estaban en uso, su ubicación y los daños alegados. La AAA y ARG presentaron sus respectivas oposiciones, bajo fundamentos procesales.[15] Esta vez, el TPI rechazó reconsiderar su determinación y declaró no ha lugar la petición el 18 de octubre de 2023.[16]

No conteste aún, el señor Duchesne Landrón presentó el 15 de noviembre de 2023, ante este foro intermedio, un recurso apelativo y planteó los siguientes señalamientos de error:

**PRIMER ERROR:** Erró el Tribunal de Primera Instancia en dictar *Sentencia Enmendada* en virtud de Moción de Sentencia Sumaria y Reconsideración en este caso, existiendo hechos controvertibles que impiden dicha determinación.

**SEGUNDO ERROR:** Erró el Tribunal de Primera Instancia en la Determinación de Hechos Número 6, al señalar que el Registro que se conectó a la bomba, está ubicado en la servidumbre constituida a favor la Autoridad de Acueductos y Alcantarillados, mediante la

---

[14] Apéndice, págs. 13-20 y 203-210.
[15] Apéndice, págs. 21-24; 30-32 y 211-214; 215-217.
[16] Apéndice, págs. 33-34 y 218-219.

Escritura Pública 7 de 14 de enero de 1965 y que el Demandante-Apelante había construido un muro de cemento encima de la caja de cemento que protege el registro que se encuentra en la servidumbre de la AAA.

**TERCER ERROR:** Erró el Tribunal de Primera Instancia en su Determinación de Hechos Número 7 al determinar que la AAA tenía una servidumbre legal constituida hace cincuenta (50) años y el *Manhole* es un signo aparente de dicha servidumbre.

**CUARTO ERROR:** Erró el Tribunal de Primera Instancia al concluir que el Demandante-Apelante asumirá la responsabilidad de los daños ocasionados que pueda sufrir su propiedad por construir o edificar sobre o en la servidumbre de la AAA.

**QUINTO ERROR:** Erró el Tribunal de Primera Instancia al concluir que el co-demandado Aqua Recovery no tiene deber jurídico alguno para actuar conforme las alegaciones contenidas en la Demanda Enmendada.

La AAA y ARG comparecieron con sendas oposiciones. Con el beneficio de todas las posturas, estamos en posición de resolver.

**II.**

**A.**

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, gobierna el mecanismo de la sentencia dictada sumariamente. Esta herramienta procesal sirve al propósito de aligerar la conclusión de los pleitos, sin la celebración de un juicio en sus méritos, siempre y cuando no exista una legítima controversia de hechos materiales, de modo que lo restante sea aplicar el derecho. Véase, *Jusino et als. v. Walgreens,* 155 DPR 560, 576 (2001); *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664, 676 (2018); *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 109 (2015). Así se propende a la solución justa, rápida y económica de los litigios de naturaleza civil. *Pérez Vargas v. Office Depot,* 203 DPR 687, 699 (2021). En este sentido, un hecho material "es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". *Meléndez González et al. v. M. Cuebas, supra,* pág. 110. Por ello, de existir alguna controversia, ésta "debe ser de una calidad suficiente como para que

sea necesario que un juez la dirima a través de un juicio plenario". *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).

En cuanto a la revisión de un dictamen sumario, este tribunal revisor se encuentra en la misma posición que el foro de primera instancia al determinar si procede o no una sentencia sumaria. Sin embargo, al revisar la determinación del tribunal primario, estamos limitados de dos maneras: (1) sólo podemos considerar los documentos que se presentaron ante el foro de primera instancia; y (2) sólo podemos determinar si existe o no alguna controversia genuina de hechos materiales, así como si el derecho se aplicó de forma correcta. Esto es, no estamos compelidos a adjudicar los hechos medulares en disputa. *Vera v. Dr. Bravo*, 161 DPR 308, 334-335 (2004). El deber de adjudicar hechos esenciales es una tarea que le compete al Tribunal de Primera Instancia y no al foro intermedio.

A esos efectos, el Tribunal Supremo de Puerto Rico estableció el estándar específico que debemos utilizar como tribunal revisor al momento de evaluar determinaciones del foro primario en las que se conceden o deniegan mociones de sentencia sumaria. En lo pertinente, dispuso que "[l]a revisión del Tribunal de Apelaciones es una de *novo* y debe examinar el expediente de la manera más favorable a favor de la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor". *Meléndez González et al. v. M. Cuebas*, *supra*, pág. 118. Además, reiteró que por estar en la misma posición que el foro primario, debemos revisar que los escritos cumplan con los requisitos de forma recopilados en la Regla 36 de Procedimiento Civil. *Id.* Por lo cual, luego que culminemos nuestra revisión del expediente, de encontrar que en realidad existen hechos medulares en controversia, debemos tener en cuenta el cumplimiento de la Regla 36.4 de Procedimiento Civil y exponer concretamente cuáles

hechos materiales están controvertidos y cuáles están incontrovertidos. Por el contrario, de resultar que los hechos esenciales realmente están incontrovertidos, entonces nos corresponde revisar *de novo* si el foro impugnado aplicó correctamente el derecho a los hechos incontrovertidos. *Id.*, pág. 119. Al dictar una sentencia sumaria, este tribunal deberá realizar un análisis dual que consiste en: (1) analizar los documentos que acompañan la solicitud de sentencia sumaria, los que se incluyen con la moción en oposición y aquellos que obren en el expediente del tribunal; y (2) determinar si el oponente de la moción controvirtió algún hecho material, o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. *Vera v. Dr. Bravo, supra*, pág. 333. Una vez realizado este análisis el tribunal no dictará sentencia sumaria cuando: (1) existen hechos esenciales controvertidos; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho medular; o (4) como cuestión de derecho no procede. *Id.*, págs. 333-334.

**B.**

El hoy derogado Artículo 465 del Código Civil de 1930, 31 LPRA ant. sec. 1631, vigente a los hechos del caso, dispone que una servidumbre es "un gravamen impuesto sobre un inmueble en beneficio de otro perteneciente a distinto dueño". El inmueble a favor de quien está constituida la servidumbre se conoce como *predio dominante*, mientras que quien la sufre se denomina *predio sirviente*. Así, pues, "el derecho de servidumbre se puede definir como un derecho subjetivo, de carácter real y perpetuo, que concede un poder para obtener un goce o utilidad de un fundo en beneficio de otro fundo ajeno". *Ciudad Real v. Mun. Vega Baja*, 161 DPR 160, 171 (2004).

Por razón de su origen, las servidumbres pueden ser legales. Art. 472 del Cód. Civil de 1930, 31 LPRA ant. sec. 1638. Éstas se refieren a aquellas "cuyo título de constitución es la ley y, por lo tanto, el dueño del predio destinado a sufrirlas no puede impedir su nacimiento". *Ciudad Real v. Mun. Vega Baja, supra*, pág. 172. Según el Artículo 485 del Código Civil de 1930, 31 LPRA ant. sec. 1701, para determinar el cuerpo de normas aplicables, las servidumbres legales se distinguen por su objeto y se clasifican como de utilidad pública o de interés particular. *Ciudad Real v. Mun. Vega Baja, supra*, pág. 172. En lo concerniente al caso del epígrafe, las servidumbres establecidas para utilidad pública se rigen por las leyes y reglamentos especiales que las determinan y, en defecto de éstas, por las disposiciones del ordenamiento civil de manera supletoria. Art. 486 del Cód. Civil de 1930, 31 LPRA. ant. sec. 1702.

En particular, el legislador se ocupó de las servidumbres legales de utilidad pública al aprobar la Ley Núm. 143 de 20 de julio de 1979, 27 LPRA sec. 2151 *et seq.*, *Ley de Servidumbres Legales de Servicio Público* (Ley Núm. 143). La Sección 1 del estatuto dispone que "tienen carácter de servidumbres legales continuas y aparentes las servidumbres de servicio público de paso (...) de instalaciones de acueductos y alcantarillados pluviales y sanitarios. 27 LPRA sec. 2151. El Tribunal Supremo ha expresado que la naturaleza de la servidumbre legal implica que son parte del derecho administrativo. *Borges v. Registrador*, 91 DPR 112, 123-124 (1964).

La Sección 2 de la Ley Núm. 143, 27 LPRA sec. 2152, establece que las servidumbres legales "[p]odrán ser adquiridas por cualquier medio legal de adquirir la propiedad en virtud de documento privado o escritura pública, o por prescripción adquisitiva de veinte (20) años, o por expropiación forzosa". Esta sección dispone, además, que serán aplicables los principios generales sobre servidumbres continuas y aparentes contenidos en el Código Civil. Ahora, el

Tribunal Supremo ha resuelto que, en el caso de las servidumbres legales, la inscripción no es constitutiva. Es decir, tienen eficacia jurídica aunque no consten inscritas en el Registro de la Propiedad. *Ciudad Real v. Municipio Vega Baja, supra*, pág. 174.

Atinente al caso que nos ocupa, por virtud de la Ley Núm. 143, *supra*, así como del estatuto orgánico de la AAA, Ley Núm. 40 de 1 de mayo de 1945, *Ley de Acueductos y Alcantarillados de Puerto Rico*, 22 LPRA sec. 141 *et seq.*, se promulgó el Reglamento Núm. 2667 de 26 de junio de 1980, *Reglamento de Servidumbres de Paso de Acueductos y Alcantarillados*. En éste, la Sección 1.03 reglamenta la aplicación a todo proyecto de desarrollo o urbanización de terrenos y a las personas naturales y jurídicas. La Sección 2.01 (j) expone que la servidumbre es un derecho real, la cual se establece sobre franjas o porciones de terreno, con el fin de ser utilizadas para "la instalación, operación, reparación, el paso y conservación de los sistemas de acueductos y alcantarillados" y sujetos a las restricciones impuestas.

En su parte pertinente, la reglamentación establece lo siguiente con relación a la constitución de la servidumbre:

. . . . . . . .

> Sección 4.02. *Carácter de la Servidumbre* – Toda servidumbre de paso de acueductos y/o alcantarillados constituida en base a lo anteriormente establecido, tendrá carácter de servidumbre legal, continua y aparente y le serán aplicables los principios generales sobre servidumbres contenidas en el Código Civil de Puerto Rico, conforme a lo dispuesto por la Ley 143 de 20 de julio de 1979.

> Sección 4.03. *Obligación de Servidumbre Legal* – Todos los términos y condiciones consignados en este reglamento obligarán no sólo a los propietarios y a las partes, sino que también a sus cesionarios, causahabientes y sucesores en derecho.

> Sección 4.04. *Errores u Omisiones en los Planos de Inscripción* – Los planos de inscripción que apruebe la Administración de Reglamentos y Permisos delimitando la servidumbre de paso de acueductos no se interpretarán como limitativos de los derechos de la Autoridad y, si por error u omisión no se señala en

dichos planos la existencia de algún segmento de la servidumbre, equipo o artefacto del sistema de acueductos y alcantarillados de la Autoridad, el segmento y área en que sea instalado dicho equipo o artefacto estará gravado con la servidumbre correspondiente constituida mediante este reglamento. A tales efectos se entienden como concedidos a la Autoridad todos los derechos necesarios inherentes al ejercicio de la servidumbre, incluyendo aquellas áreas adicionales necesarias que deban dejarse libre de estructuras u obstáculos que impidan a la Autoridad el libre acceso a los referidos equipos artefactos e instalaciones.

Sección 4.06. *Adquisición de la Servidumbre* – Toda servidumbre constituida a base de lo establecido en esta sección también podrá ser adquirida por la Autoridad por cualquier medio legal de adquirir la propiedad en virtud de documento privado escritura pública, o por prescripción adquisitiva de veinte (20) años o por expropiación forzosa.

.        .        .        .        .        .        .        .

En cuanto al derecho de acceso, en la Sección 5.02 de la reglamentación, se concede el acceso hasta la servidumbre constituida, tanto a la AAA como a sus representantes. El derecho de acceso incluye "el equipo necesario, para efectuar el trabajo y las prácticas necesarias para el funcionamiento, operación, conservación y reparación del sistema público de acueductos y alcantarillados". *Id.* Aun cuando el acceso se debe realizar por el sitio menos gravoso posible de los solares, se prioriza el interés público, así como el adecuado uso y mantenimiento de la servidumbre y del sistema sanitario. La Sección 5.03 del Reglamento Núm. 2667 extiende el derecho de acceso al de instalación de artefactos, equipos y tomas necesarias para suplir los servicios de acueductos y alcantarillados.

Finalmente, el Reglamento Núm. 2667, *supra*, comprende disposiciones sobre las siguientes prohibiciones:

.        .        .        .        .        .        .        .

Sección 6.02. *Prohibición General* – En general se prohíbe la realización de toda obra o actividad, incompatibles con los derechos de servidumbre de la Autoridad, que pudiera deteriorar, destruir o fuere perjudicial al servicio público de acueductos y alcantarillados o su mantenimiento. Las personas que

realicen las obras o actividades mencionadas en esta disposición, que incluyen las obras y actividades que se indican más adelante, asumirán la responsabilidad de la consecuencia de tales actos incluyendo de los daños y perjuicios que resulten de cualquier naturaleza a persona o propiedades, quedando la Autoridad relevada de toda responsabilidad.

. . . . . . . .

Sección 6.04. *Estructuras o Edificaciones* – Las servidumbres de paso de acueductos y alcantarillados deberán dejarse libres de estructuras o edificaciones. La Autoridad previa orden de un tribunal competente podrá derribar o demoler cualquier estructura o edificación que este actualmente o aparezca en el futuro construida en violación a lo aquí expresado, y cobrar al propietario por la remoción de las mismas.

. . . . . . . .

De hecho, la Sección 5 de la Ley Núm. 143, *supra*, 27 LPRA sec. 2155, tipifica como delito menos grave y apareja una sanción de seis meses de reclusión o multa que no sea mayor de $500, o ambas penas, a "toda persona que instale, ubique o construya cualquier estructura en las servidumbres legales a que se refiere la Sección 1 de esta ley, sin el previo consentimiento escrito de la entidad pública o municipio que sea titular del derecho".

### III.

En el caso de autos, el señor Duchesne Landrón señala como error del TPI la desestimación de su reclamación civil y arguye que existen controversias de hechos materiales. En específico, impugna las determinaciones de hecho 6 y 7. Por igual, aduce que el TPI erró al no reconocer un deber jurídico a ARG y determinar que el apelante debe asumir los daños ocasionados por construir sobre la servidumbre. Por su relación, discutimos en conjunto aquellos señalamientos de error que fueron fundamentados en el recurso apelativo.

De conformidad con los hechos probados 6 y 7, cuestionados por el apelante, el TPI consignó que al señor Duchesne Landrón se le notificó que el registro al que se conectó el *by-pass* está ubicado en una servidumbre legal a favor de la AAA. También se le hizo saber

que el muro construido estaba ubicado encima de la caja de cemento que protege a dicho registro. El TPI expresó que, cuando el demandante adquirió su residencia en 1976,[17] ya existía la servidumbre legal de la AAA constituida desde 1965[18] y cuyo *manhole* era un signo aparente, por lo que el señor Duchesne Landrón tuvo conocimiento de la ubicación del registro y del gravamen. Estas determinaciones no fueron controvertidas.

En esencia, en su argumentación, el señor Duchesne Landrón se limita a negar que haya construido el muro sobre la caja de cemento que protege al registro sanitario. Sostiene que el presunto desuso del *manhole* hace inaplicables las disposiciones reglamentarias, en referencia a la Sección 4.04 del Reglamento Núm. 2667, *supra*, antes citada. Además, dice que los trabajos de la AAA no se debieron a una avería, porque, según afirma, nunca existió una tubería sanitaria en el lugar. Aduce también que la carta suscrita por el ingeniero Martínez Toledo, que el propio apelante unió a su oposición, es prueba de referencia. En general, sus argumentos descansan principalmente en la declaración jurada prestada al oponerse al dictamen sumario instado por los apelados.[19] No obstante, al evaluar el documento jurado, somos del criterio que las alegaciones conclusivas plasmadas por el apelante, en realidad, no aportan controversias medulares que impidan el dictamen abreviado. Veamos.

Luego de un examen *de novo* de la petición sumaria y su oposición, así como de los documentos anejados, en el que los contendientes cumplieron sustancialmente con los requisitos formales de la Regla 36 de Procedimiento Civil, *supra*, no albergamos duda de la existencia de una servidumbre a favor de la AAA, la cual

---

[17] Véase el Apéndice, págs. 110-115.
[18] Refiérase al Apéndice, págs. 103-109.
[19] Apéndice, págs. 158-161.

se constituyó por escritura pública en 1965, por lo que es anterior a la adquisición del predio por parte del apelante en 1976. Igualmente, surge de los autos que el ingeniero Martínez Toledo de la AAA constató que el *manhole*, que el apelante ha indicado que se encuentra en su propiedad, es parte del sistema sanitario de la zona.[20]

Ahora bien, independientemente de la convergencia o no del predio del apelante y la servidumbre de la AAA,[21] de existir alguna discrepancia en las descripciones de los linderos y la realidad registral, el Reglamento Núm. 2667 dispone palmariamente que los planos de inscripción no se interpretan de manera limitativa a los derechos de la AAA. Incluso, si por algún error u omisión no se señala la existencia de algún segmento de la servidumbre o artefacto del sistema sanitario, como lo es un registro o *manhole*, el área en que se haya instalado se considera gravado con la servidumbre legal debidamente constituida. Recuérdese que las servidumbres legales de utilidad pública, como la del presente caso, se rigen por las leyes y reglamentos especiales que las determinan. Ello así, porque, en estos casos, prima el bienestar general sobre el individual.

Del mismo modo, el ordenamiento jurídico proscribe la construcción de toda obra incompatible con los derechos de servidumbre de la AAA. Es decir, se prohíbe cualquier estructura, como puede ser un muro de contención o verjas metálicas, en las servidumbres de la AAA. La persona que infrinja la disposición legal no sólo se expone a una penalidad, sino que asume las consecuencias de sus actos, incluyendo los daños y perjuicios que resulten. A su vez, la AAA queda relevada de toda responsabilidad. Por lo tanto, es forzoso colegir que se derrota la causa de acción del

---

[20] Apéndice, págs. 156-157.

[21] Cabe señalar que, mediante la mensura realizada por el agrimensor Dávila Colón, éste certificó que una porción de la línea de alcantarillado existente está situada dentro de la propiedad del apelante, y estimó un área de 67.5220 metros cuadrados. Véase, Apéndice, págs. 162-164.

apelante. Es decir, aun cuando el TPI celebre una vista para demostrar y valorizar los daños alegados sobre el muro de contención, lo cierto es que, ante la existencia de la servidumbre de la AAA en la franja libre y en el área del *manhole*, unida a la prohibición de construcción, la reglamentación aludida releva a la AAA y a ARG de responsabilidad.[22]

Nótese que, en el presente caso, no fue hasta el 2016 que el apelante se querelló por un desborde de aguas sanitarias. No consta en los autos ningún tipo de gestión previa de parte del señor Duchesne Landrón para la remoción del *manhole* en "desuso" que alega se encuentra en su propiedad, a pesar de constituir un signo aparente indiscutible de la servidumbre de la AAA. En treinta años, tampoco se desprende del expediente que haya denunciado el desborde de aguas negras sobre la Quebrada Ausubo. Así, pues, la emergencia del desbordamiento reportado en 2016 conllevó, primero, una respuesta temporal con la instalación del *by-pass*; y segundo, la solución permanente de la obra realizada por ARG. El uso del *manhole*, que se considera parte inherente del sistema sanitario de la AAA en la zona, fue crucial como medida de protección de la Quebrada Ausubo. A base de la Ley Núm. 143, *supra*, y del Reglamento Núm. 2667, *supra*, queda diáfanamente claro que, sobre dicho registro de inspección, se extiende la servidumbre legal de la AAA y, por ende, la prohibición de construcción de cualquier obra.

Ciertamente, a base del ordenamiento jurídico especial aplicable, opinamos que la AAA ostenta todos los derechos necesarios inherentes al ejercicio de la servidumbre legal. Esto incluye las áreas adicionales del sistema de acueductos y

---

[22] Al respecto, el señor González Santiago de ARG indicó que "se tuvo que cortar terreno frente al muro que está dentro de la servidumbre de paso de [la] AAA y al remover el terreno colapsó". De hecho, añadió que el señor Duchesne Landrón rechazó la reparación. Apéndice, pág. 133, acápite 23.

alcantarillados, cuyos accesos deben permanecer libres de obstáculos incompatibles con los derechos del gravamen impuesto por ley a su favor, de manera que no se interfiera con el acceso a las instalaciones o artefactos, en las tareas de reparación o mantenimiento del sistema pluvial y sanitario. En consecuencia, ante la falta de hechos conducentes a demostrar una acción u omisión culposa o negligente por parte de los apelados, procede la confirmación del dictamen impugnado.

**IV.**

Por los fundamentos expuestos, se confirma la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones